SHERRY KESSNER, Plaintiff-Appellant, *v.* HELEN R. McDONALD, Defendant-Appellee.

Second District (1st Division)    No. 75-397

Opinion filed March 11, 1977.—Rehearing denied April 7, 1977.

Eugene Propp and David V. Schultz, both of Chicago, for appellant.

Roger W. Eichmeier, of Matthews, Jordan, Dean, Eichmeier & Petersen, of Aurora, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

The plaintiff herein, a pedestrian, brought an action for personal injury against the defendant. In a jury trial the verdict was rendered for the defendant and the plaintiff appeals.

The plaintiff has raised four issues in this appeal. The first and second contention of the plaintiff is that the verdict is against the manifest weight of the evidence. The third issue presented is that the introduction of the testimony as to the plaintiff's intoxication and the giving of an instruction thereon was error. Lastly, plaintiff argues that defense counsel's closing arguments contained improper comments that were prejudicial and denied the plaintiff a fair trial.

On the night of September 15, 1973, the plaintiff, her husband, and her brother, Ronnie Schultz, drove from Chicago to the Aurora dam area to go fishing. They arrived at the fishing site about 10:30 p.m. They were unable to buy any bait and it was drizzling. They became disgusted and started to drive back home by way of Roosevelt Road, a four-lane, east-west road. Two or three blocks west of the intersection of Winfield Road and Roosevelt Road the car ran out of gas. A Winfield police officer stopped and told them that there was a gas station 8 miles up the road but that he doubted that it would be open. He offered them no assistance. They started walking east on Roosevelt Road and reached Winfield Road. At this point they crossed to the south side of Roosevelt Road and continued to walk in an easterly direction, single file. According to the plaintiff's testimony her brother was walking first, she was in the middle and her husband was walking last. The plaintiff then testified that she decided to cross over to the north side of Roosevelt Road and started walking westerly on the shoulder. She further testified that she held up the empty gas can which she had been given by her brother or her husband, and attempted to flag down a car that was driving westerly. She then testified that her husband shouted at her three times, "Watch out for the car," she turned around, saw the lights of the defendant's car and was struck while she was on the north shoulder of Roosevelt Road. On the other hand, the defendant testified that she was driving westerly on Roosevelt Road at approximately 1 o'clock in the morning in the northerly westbound lane at a speed of about 45 mph. She first saw the plaintiff to the left of the center line of the westbound lanes of Roosevelt Road and that the plaintiff dashed across the northerly westbound lane in front of her car. Defendant testified that she swerved to the left but that she struck the plaintiff. The defendant's passenger also testified that the defendant swerved the car to the left and applied her brakes just before the plaintiff was struck. The police officer investigating the accident testified that there were 65' of skid marks in the northerly, westbound lane east of where the plaintiff was struck and that, in his opinion, this would indicate that the

defendant was traveling at a speed of between 40-50 mph. Plaintiff's exhibit 1 indicates that the speed limit was 50 mph in the area in question. The plaintiff was taken to the Central Du Page Hospital where she was examined and treated by Dr. Jabaay about 3 in the morning.

■■ In support of plaintiff's contention that the verdict is against the manifest weight of the evidence, the plaintiff contends that the defendant failed to keep a proper lookout in this semirural area at 1 o'clock in the morning and that the issue squarely presented is where the plaintiff was at the time she was struck. Plaintiff's evidence places her on the shoulder while the defendant testified that the plaintiff was crossing the highway from south to north when the defendant first saw plaintiff. Plaintiff contends that the trial testimony of the defendant placed the plaintiff to the left of the center of defendant's car as plaintiff was crossing the highway, whereas in defendant's deposition she stated that the plaintiff was struck between the center and the right part of the car. It is interesting to note the defendant did, in fact, testify that when she saw the plaintiff she swerved to the left. It is, of course, conceivable that the plaintiff could have been seen to the left and yet the actual impact could have occurred between the center and the right portion of defendant's car. In any event, whether the plaintiff was struck when she was on the shoulder, as she contends, or whether she was struck when she was running across the road, as the defendant testified, is a matter of fact for the jury to determine. The cases in Illinois are legion that it is the function of the jury to determine the preponderance of the evidence, and a reviewing court will only reverse if the jury's determination is against the manifest weight of the evidence. (See, *e.g., Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 158 N.E.2d 63.) The courts of Illinois have also repeatedly held that the credibility of the witnesses is a factual question to be determined by the jury in a jury trial. (See, *e.g., Brown v. Zimmerman* (1960), 18 Ill. 2d 94, 163 N.E.2d 518.) In addition, in the case of *Wroclawski v. Waszczyk* (1976), 35 Ill. App. 3d 408, 412, 342 N.E.2d 261, 265, the court there stated:

> "Moreover, for a judgment to be against the manifest weight of the evidence, the appellant must present evidence that is so strong and convincing so as to completely overcome the evidence and presumptions, if any, existing in the appellee's favor. [Citations.]"

In the case before us we will not substitute our judgment for that of the jury as to the factual determination of where the plaintiff was at the time she was struck. There is sufficient evidence which supports the jury's finding and plaintiff has failed to meet her burden. The plaintiff also testified that she did not see defendant's car approaching or the lights thereof because she was looking down at the ground and that there was a

bush sticking out that obscured her view of the approaching car. This too was a matter for the determination of the jury, and we will not disturb their findings in this regard.

We turn next to the contention of the defendant that the admission of testimony as to plaintiff's sobriety or intoxication and the subsequent instruction on plaintiff's intoxication relative to contributory negligence constituted reversible error.

At the outset of the trial the plaintiff's attorney made a motion in limine relative to the admissibility of evidence of plaintiff's condition of sobriety on the night in question. A preliminary hearing was held on this motion outside the presence of the jury, and the motion in limine was granted. After Dr. Jabaay had testified, the defense counsel made an offer of proof as to this witness relative to the sobriety of the plaintiff. The trial court reversed its prior ruling, set aside the motion in limine and allowed the doctor to testify as to the intoxication of the plaintiff. Dr. Jabaay then testified he advised the plaintiff that he was her doctor and was going to take care of her and that he had to know how much she had had to drink. She replied that she had had eight beers. The doctor also testified that he detected the odor of alcohol on her breath and that her speech was slurred. The doctor further testified that in his opinion the plaintiff was drunk or intoxicated.

The police officer who was at the scene of the accident also testified that in his opinion the plaintiff was intoxicated.

The plaintiff testified that she had one beer at her apartment before they left Chicago at about 7 in the evening and that she had 1½ beers at the dam site prior to their leaving there about 11 that evening.

In support of her contention of error in the admission of testimony and the instruction on intoxication, the plaintiff has cited in some detail the case of *Shore v. Turman* (1965), 63 Ill. App. 2d 315, 210 N.E.2d 232. In that opinion the court said that plaintiff's position, simply stated, is that it is error to give instructions as to intoxication where there is no evidence, opinion or otherwise to support such instruction. The court further stated, "[w]here there is no evidence of intoxication of the plaintiff, the giving of an instruction dealing with contributory negligence on the ground of intoxication is reversible error." (63 Ill. App. 2d 315, 321, 210 N.E.2d 232, 235.) We do not find *Shore v. Turman* to be factually applicable to the case before us.

It is true that mere consumption of intoxicating beverages does not establish intoxication and there must be proof of facts tending to show such intoxication. (*Kitten v. Stodden* (1966), 76 Ill. App. 2d 177, 221 N.E.2d 511; *Coleman v. Williams* (1976), 42 Ill. App. 3d 612, 356 N.E.2d 394.) Plaintiff contends that the only evidence which purportedly characterized plaintiff's condition as intoxicated is that of Dr. Jabaay

during cross-examination. Plaintiff summarizes the doctor's testimony as stating that she told him she had eight beers, that she had an odor of alcohol on her breath and that she had some thickness of tongue when speaking. However, the doctor went further and stated at least twice that in his opinion she was intoxicated or drunk. Additionally, the investigating police officer who saw the plaintiff both at the scene of the accident and in the hospital testified as follows:

> "Q And based upon observing her, talking to her, and smelling her breath, do you have an opinion as to whether or not Mrs. Kessner was intoxicated?
> A Yes; I do.
> Q And what is that opinion?
> A I believe she was."

We thus have a treating physician and the investigating police officer testifying that the plaintiff was intoxicated. The plaintiff contends further that the doctor may have been mistaken in asserting that the plaintiff told him that she had eight beers and that it might be that she had "A" beer. When asked about this possibility, Dr. Jabaay stated that the way he heard it, it was that she had eight beers. It is interesting to note that the day after her treatment plaintiff called the doctor and denied that she had said that she had eight beers. The doctor also reiterated his opinion as to her intoxication in answers to several questions during redirect examination by plaintiff's counsel. His opinion was not only based upon her statement to him as to the consumption of the eight beers but upon his observation of her, the smell of alcohol on her breath and the slurring of her speech.

■■ In *Clarke v. Rochford* (1967), 79 Ill. App. 2d 336, 224 N.E.2d 67 the court observed that questions cannot be asked which intimate to the jury that a party was intoxicated at the time of the accident unless there is supporting evidence. But the court therein further observed,

> "Evidence of intoxication is admissible in a personal injury action as tending to show the negligence of one of the parties." (79 Ill. App. 2d at 340, 224 N.E.2d at 682.)

We find that to be the situation here. Evidence of the plaintiff's intoxication was adduced not only from a lay witness, the investigating officer, but also from the treating doctor. We therefore find that the introduction of such testimony was proper and that the instruction thereon was proper.

The last contention of the plaintiff is that in two separate instances the defense counsel made improper comments in his closing argument that were prejudicial and denied the plaintiff a fair trial. The first instance in question occurred when defense counsel stated that the plaintiff told the police officer that she was crossing Roosevelt Road and was hit. An

objection was made to this statement; the attorney for the plaintiff stated that the officer "said she was walking by the side of the roadway when she was struck. That is the testimony." The court sustained the objection and defendant's counsel then stated:

> "That she was crossing the road. Maybe I heard it wrong. The otherwise was she was walking on the road. The police officer put her on the roadway at the time of the accident."

The latter statement is correct. The testimony of the police officer was:

> "A. She stated that she was—as I remember, she was walking along the roadway.
>
> Q. And then what happened? Or is that all she told you?
>
> A. She—more or less that was it. Walking along the roadway."

The other statement made by defense counsel which the plaintiff contends constituted reversible error was defense counsel's statement in closing argument that he did not question one of the doctor's bills because his office thought this was a no-liability case. Objection was made to this, and defense counsel stated that this was argument and that this was his opinion. This objection was overruled and counsel for the defendant then stated that this was not a liability case.

■■■ As to the first statement made concerning the physical position of the plaintiff at the time of the accident, counsel for the defendant did in fact correct his statement showing that the police officer testified that the plaintiff was on the roadway at the time of the accident. We do not believe this constituted prejudicial error but was a misstatement corrected. The second issue as to counsel's personal opinion that this was a no-liability case was, of course, an improper comment. We find no authority for counsel's right to state his opinion as to liability in a civil case. He may, of course, state that the evidence shows there is no liability but should not express his personal opinion to that effect. Stated succinctly, the question to be determined is whether this improper argument was of such a character as to so prejudice the plaintiff that the jury returned an improper verdict against her. We find, after a close scrutiny of the record herein, that the verdict of the jury would not have been, otherwise had these statements of opinion not been made. We therefore conclude, notwithstanding defense counsel's improper statements, the verdict of the jury still would have been for the defendant. We therefore affirm.

Affirm.

RECHENMACHER, P. J., and SEIDENFELD, J., concur.