YALE DEVELOPMENT COMPANY, INC., Plaintiff-Appellee and Cross-Appellant, v. TEXACO, INC., Defendant-Appellant and Cross-Appellee.

Second District   No. 75-492

Opinion filed June 8, 1977.—Rehearing denied September 16, 1977.

Robert S. Soderstrom, of McKenna, Storer, Rowe, White & Farrug, of Chicago, for appellant.

Edward Van de Houten, Jr., of Villa Park, for appellee.

Mr. JUSTICE BOYLE delivered the opinion of the court:

In the spring of 1971, Yale Development Company, Inc., plaintiff-appellee, hereinafter referred to as "Yale," entered into negotiations with

Texaco, Inc., defendant-appellant, hereinafter referred to as "Texaco," for the sale of certain real estate owned by Yale. Texaco was interested in obtaining the property as a site for a new gas station. The property in question is located in the vicinity of Glen Ellyn on Roosevelt Road near Valley Road in an unincorporated portion of Du Page County.

On June 14, 1971, Yale, by its president, Mr. Arthur Sheridan, completed a purchase option form. The form was provided by Texaco. Mr. Sheridan merely inserted a legal description of the property, a $400 option consideration, and the total purchase price of $125,000. He also deleted paragraphs 5 and 6 of the form.

The form, with the additions and deletions made by Mr. Sheridan of Yale, was forwarded to Texaco's real estate agent, Mr. William Rife. Mr. Rife forwarded the form to his superior, Mr. Robert Carr, who objected to the deletion of paragraph 6. He informed Mr. Rife that Texaco required paragraph 6 to be included in the contract. Thereupon, Mr. Rife prepared an overleaf paragraph 6, attached it to the contract, and returned this revised contract to Mr. Sheridan of Yale.

Mr. Sheridan was not willing to accept Texaco's version of paragraph 6 and inserted his own version in its place.

Texaco's version of paragraph 6 reads as follows:

> "6. In the event it becomes necessary to deed or dedicate part of the property for highway purposes in order to obtain service station permits, Optionee may cancel and terminate the Purchase Contract created by its exercise of this Option in the event that the portion of the premises which would remain after such a proposed conveyance would, in its opinion, be unsatisfactory for a gasoline service station use, and thereupon Optionor shall refund all monies received hereunder and neither party shall have any other or further rights against the other."

Yale's version as drafted by Mr. Sheridan merely added the following to Texaco's version:

> "* * * excepting herefrom a strip of land across the frontage of the premises having a depth of approximately 25 feet, which land may be required by the State of Illinois for widening in conjunction with the construction of an interchange."

Yale's version of paragraph 6 was initialed by Mr. Rife and submitted to his superiors in the Texaco organization. Mr. Carr testified that he rejected Yale's version of paragraph 6; however, the record reveals that Texaco authorized and sent to Yale a check for $400 as consideration for the option contract.

At trial, Texaco attempted to show that Yale's version of paragraph 6 was rejected by Texaco and that its (Texaco's) version was resubmitted to Yale and approved by Yale. In any event, Texaco argues that only its

home office in New York had authority to bind Texaco to a contract and only its version of paragraph 6 was transmitted to New York for approval.

On November 24, 1971, Texaco exercised the option to buy the property. The parties set about to acquire the necessary permits for the service station. In this process, Texaco submitted a general arrangement plan to the State of Illinois in order to secure a highway access permit. This plan came back from the State with a request that it be modified to accommodate a proposed widening of Roosevelt Road. Texaco never submitted a modified plan. Sometime thereafter, the dispute between Yale and Texaco came to light.

When Texaco refused to go through with the deal, Yale sued for breach of contract. After a lengthy bench trial, judgment was rendered in Yale's favor, and damages were set at $55,580.

Texaco appeals from that judgment.

The principal issue raised by Texaco on appeal is which, if any, version of the contract was agreed to by the parties.

Simply stated, Texaco's initial argument was that the trial court was in error when it found the existence of a contract. Texaco asserts that there was no contract because there was no meeting of minds on a material issue, namely, the two versions of paragraph 6.

In the alternative, Texaco argues that if there was a contract, it was Texaco's version of the contract, which, Texaco contends, it did not breach.

■■ We must reject both of these contentions. It is well settled that the findings of the trier of fact will not be disturbed unless they are clearly contrary to the manifest weight of the evidence. (*Lau v. West Towns Bus Co.* (1959), 16 Ill. 2d 442, 158 N.E.2d 63; *Geist v. Lehmann* (1974), 19 Ill. App. 3d 557, 312 N.E.2d 42; *Kessner v. McDonald* (1977), 46 Ill. App. 3d 333, 360 N.E.2d 1178.) Such is not the situation in the case at hand.

The trial court's letter of decision clearly reveals its reasoning. It found Texaco was bound to Yale's version of paragraph 6 by Mr. Rife's initialing of it. The trial court concluded that because of the long course of dealing between Messrs. Rife and Sheridan, Mr. Sheridan was justified in concluding that Mr. Rife had the authority to bind Texaco.

■■ When a corporation permits an agent to act in a manner that reasonably leads third persons who deal with that agent to conclude that the agent is authorized to bind the corporation to contracts, then that corporation may be bound by the acts of that agent, even though those acts are beyond the scope of the agent's actual authority. (*Freeport Journal-Standard Publishing Co. v. Frederic W. Ziv Co.* (1952), 345 Ill. App. 337, 103 N.E.2d 153; *Diversification Consultants, Inc. v. Candy-Gram, Inc.* (1970), 130 Ill. App. 2d 1029, 264 N.E.2d 788.) The record before us reveals the trial court had ample evidence to conclude that Mr.

Rife had given Mr. Sheridan and Yale the impression that he, Rife, had the authority to bind Texaco to a contract. Therefore, we must agree with the trial court's conclusion that there was a contract between Yale and Texaco and that the contract contained Yale's version of paragraph 6.

In an effort to obtain a highway access permit, Texaco submitted a general arrangement plan of its proposed gasoline station to the State. The plan came back to Texaco with some suggested modifications, the principal one being that Texaco move everything back from Roosevelt Road to accommodate a proposed widening of that road.

Texaco contends that if it had complied with this request, it would have constituted a dedication of the land involved, thereby discharging Texaco from its obligation to perform the contract.

■■ We must reject this argument for two reasons. First, the trial court found that the requested changes were merely requests and that obtaining a highway access permit was not dependent upon Texaco's making the requested changes. This finding was supported by ample evidence in the record, and, therefore, we will not disturb it.

Secondly, assuming arguendo that the state was going to insist Texaco make the changes in the general arrangement plan as a condition for obtaining a highway access permit and that the changes involved constituted a dedication of the property to the State, Texaco still would have been obligated to perform. The land to be dedicated by this proposed modification in the general arrangement plan was covered by the exception that Yale wrote into paragraph 6, which the trial court found to be the contract between the two parties.

■■ Texaco next alleges that Yale, not Texaco, breached whatever contract did exist. Again, Texaco is arguing the facts. The trial court rejected these arguments. Our review of the record reveals the trial court had ample evidence to justify its rejections. Since we are in concurrence with the findings of the trial court in this area, any discussion of them would add little to this opinion. There is no need for us to discuss them here.

■■ Finally, there is the matter of Yale's cross-appeal against Texaco. The trial court originally set damages at $55,580. When it ruled on Texaco's post-trial motions, the trial court reduced the amount of damages to $42,850. However, Texaco's post-trial motions did not raise the issue of damages whatsoever. A trial court has jurisdiction to modify a judgment within 30 days after it is rendered only upon a showing of good cause. (*Trojan v. Marquette National Bank* (1967), 88 Ill. App. 2d 428, 232 N.E.2d 160; *City of DeKalb v. Anderson* (1974), 22 Ill. App. 3d 40, 316 N.E.2d 653.) A search of the record before us fails to reveal any showing of good cause. Therefore, we must conclude the trial court's reduction of the size of the damage award was improper.

Therefore, we remand this cause to the circuit court of Du Page County with instructions to enter a judgment in favor of Yale Development Company, Inc., and against Texaco, Inc., in the sum of $55,580.

Remanded with instructions.

SEIDENFELD and NASH, JJ., concur.