A. H. GRUETZMACHER &
COMPANY, Plaintiff,

v.

MASSEY–FERGUSON, INC. and
Massey-Ferguson Industries,
Ltd., Defendants.

MASSEY–FERGUSON, INC., Third
Party Plaintiff,

v.

James STEARNS and Gordon Kenngott,
Third Party Defendants.

James STEARNS, Counter-Plaintiff,

v.

MASSEY–FERGUSON, INC. and
Massey-Ferguson Industries,
Ltd., Counter-Defendants.

James STEARNS, Fourth Party Plaintiff,

v.

Gordon KENNGOTT, Fourth
Party Defendant.

No. 79 C 4947.

United States District Court,
N. D. Illinois, E. D.

April 10, 1981.

Carroll, Hartigan & Hillery, Chicago, Ill., for plaintiff.

Thomas L. Browne, Donald L. Mrozek, Hinshaw, Culbertson, Molemann, Hoban, & Fuller, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge:

This matter comes before the court on the defendant Massey-Ferguson, . Inc.'s ("Massey-Ferguson") motion for summary judgment on the complaint and the third party defendant James Stearns' ("Stearns") motion for leave to file an amended counterclaim. For the reasons set forth below, the motion for summary judgment is granted as to count I of the complaint and denied as to count II of the complaint. In addition, the motion for leave to file an amended counterclaim is denied. Status is set for April 28, 1981 at 10:00 a. m.

The plaintiff A. H. Gruetzmacher and Company ("Gruetzmacher") filed suit against Massey-Ferguson and Massey-Ferguson Industries, Ltd. (hereinafter collectively referred to as "Massey-Ferguson") based upon diversity jurisdiction. *See* 28 U.S.C. § 1332 (1978). The complaint alleges that in 1978 Gruetzmacher and Massey-Ferguson, through the latter's agent Gordon Kenngott ("Kenngott"), agreed that Gruetzmacher was to receive a "customary and reasonable" finder's fee. if it procured a purchaser for Massey-Ferguson's lawn and garden business. The complaint further alleges that Gruetzmacher procured Fuqua Industries, Inc. ("Fuqua") as a purchaser of the business but that Massey-Ferguson refused to pay the finder's fee. Count I of the complaint seeks recovery under an implied-in-fact contract theory while count II seeks recovery under the theory of quantum meruit.

Massey-Ferguson filed a motion for summary judgment on the complaint. In support of its motion, Massey-Ferguson has established the following facts. In September 1977, Massey-Ferguson decided to sell its lawn and garden business. (Affidavit of Don Douglass at 2.) On September 19, 1977, Don Douglass ("Douglass"), a Massey-Ferguson executive, drafted a memorandum to J. E. Mitchell ("Mitchell"), president of Massey-Ferguson, which identified four possible purchasers of the business including Fuqua. (*Id.*) In January 1978, Massey-Ferguson entered into a contract with Stearns pursuant to which Massey-Ferguson agreed to pay Stearns one percent of the sales price of the business if Stearns located a purchaser. (Memorandum in Support of the Motion for Summary Judgment, Exhibit B.) [1] The contract stated that Massey-Ferguson "shall have no obligation to compensate any third party with respect to the project." (*Id.* at 2.)

Douglass and Mitchell gave Stearns a copy of the memorandum which identified Fuqua as a prospective buyer. (Deposition of James Stearns at 46–47; Affidavit of Don Douglass at 2–3.) Shortly thereafter, Stearns advised Kenngott of the contract with Massey-Ferguson and showed Kenngott the list of prospective purchasers. (Deposition of Gordon Kenngott at 16–18; Deposition of James Stearns at 68–71.) Stearns and Kenngott agreed to split Stearns' one percent fee from Massey-Ferguson if Kenngott found a purchaser. (*Id.*) Stearns told Kenngott that Kenngott had no authority to hire another finder to assist in the transaction. (Deposition of Gordon Kenngott at 58; Deposition of James Stearns at 67–69.) Kenngott admits that he did not have a contract with Massey-Ferguson and had no communication with Massey-Ferguson regarding a finder's fee. (Deposition of Gordon Kenngott at 70.)

In April 1978, Kenngott had a conversation with George Gerk ("Gerk"), president of Gruetzmacher, wherein Kenngott informed Gerk about Stearns' finder's fee arrangement with Massey-Ferguson and that Kenngott and Stearns had agreed to split the fee. (Deposition of Gordon Kenngott at 20–21, 65–66; Deposition of George Gerk at

---

1. Stearns signed the original on or about the date of the agreement. (Deposition of James Stearns at 33.)

13–15.)[2] In a letter dated April 20, 1978, Gerk advised J. B. Fuqua, chairman of the board of Fuqua, that the Massey-Ferguson lawn and garden business was for sale. (Deposition of George Gerk at 12–13.) Subsequently, Gerk had several telephone conversations with J. B. Fuqua and William Smith ("Smith"), chairman of the McDonough Power Equipment Company division of Fuqua ("McDonough"), concerning the sale of the Massey-Ferguson lawn and garden business. (*Id.* at 40–42.) Meanwhile, Stearns stated that he began contacting Fuqua and McDonough personnel immediately after he entered into the contract with Massey-Ferguson. (Deposition of James Stearns at 52–53.)

On or about May 3, 1978, Smith delivered a letter to Massey-Ferguson expressing McDonough's intent to purchase the lawn and garden business. (Memorandum in Support of the Motion for Summary Judgment, Exhibit D.) Negotiations between McDonough and Massey-Ferguson continued from May to July 1978. (Affidavit of Don Douglass at 3.) On or about August 3, 1978, Fuqua and Massey-Ferguson executed an agreement wherein Fuqua agreed to purchase the lawn and garden business from Massey-Ferguson. (*Id.* at Exhibit 3.) Gerk telephoned Stearns with regard to splitting the finder's fee from the contract between Massey-Ferguson and Fuqua. (Deposition of James Stearns at 101–04; Deposition of George Gerk at 34–35.)[3] Gerk sent a letter dated June 13, 1978 to Massey-Ferguson and McDonough/Fuqua which states: "I am reminding each of the parties involved that your contract should provide for the payment of A. H. Gruetzmacher & Company's commission upon the closing date." (Memorandum in Support of the Motion for Summary Judgment, Exhibit E.) On or about June 20, 1978, Gerk received a letter from Earl Devine ("De-

vine"), one of Massey-Ferguson's attorneys, which requested an explanation of the commission allegedly owed to Gruetzmacher. (*Id.*, Exhibit F.) On June 26, 1978, Gerk telephoned Devine. (Deposition of George Gerk at 47.) During the telephone conversation, Devine denied that Massey-Ferguson owed Gruetzmacher any fee and explained that its contract was with Stearns. (*Id.*; Memorandum in Support of the Motion for Summary Judgment, Exhibit G.)

On September 8, 1978, Gerk wrote a letter to J. B. Fuqua advising him that Massey-Ferguson had refused to pay Gruetzmacher a finder's fee and requesting a "suggestion" from Fuqua. (*Id.*, Exhibit I.) On September 13, 1978, J. B. Fuqua wrote a letter to Gerk thanking him for telling Fuqua about Massey-Ferguson's lawn and garden business and enclosing a check for $25,000. (*Id.*, Exhibit J.) Gerk kept the entire $25,000. (Deposition of George Gerk at 52.) On November 16, 1978, Massey-Ferguson tendered to and Stearns accepted a check for one percent of the purchase price of the lawn and garden business as per their contract. (Memorandum in Support of the Motion for Summary Judgment, Exhibit K.) Stearns then tendered and Kenngott accepted a check for fifty percent of the finder's fee as per their agreement. (Deposition of Gordon Kenngott at 55.)

■ Federal Rule of Civil Procedure 56(c) provides that summary judgment may be entered in a case "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is upon the moving party to establish the lack of a triable issue of fact, and

---

**2.** The exact date of this conversation is in dispute. Kenngott stated that the conversation occurred in April 1978. (Deposition of Gordon Kenngott at 66.) Gerk initially agreed that the conversation occurred prior to April 20, 1978, but later stated that the conversation was in June 1978. (Deposition of George Gerk at 13–17.)

**3.** Stearns stated that he thought Gerk telephoned him in July or August 1978. (Deposition of James Stearns at 101–02.) Gerk stated that he telephoned Stearns in June 1978. (Deposition of George Gerk at 34.)

all doubts must be resolved against that party. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Joseph v. Brierton,* 431 F.Supp. 50, 52 (N.D.Ill.1977). The court, however, "has the power to penetrate the allegations of fact in the pleadings and look at any evidential source to determine whether there is an issue of fact to be tried." *Kirk v. Home Indemnity Co.,* 431 F.2d 554, 559 (7th Cir. 1970). Moreover, Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(e).

 Count I of the complaint alleges an implied-in-fact contact between Gruetzmacher and Massey-Ferguson whereby Massey-Ferguson's agent, Stearns, allegedly made Kenngott his subagent and Kenngott in turn made Gerk an agent of Massey-Ferguson. Under Illinois law there is no presumption of an agency relationship. *Louisiana Farm Supply Co. v. Carroll,* 56 Ill. App.2d 175, 175, 205 N.E.2d 478, 478 (4th Dist. 1965). Rather, the party alleging an agency relationship has the burden of proving it by a preponderance of the evidence. *Lazarus v. Pascucci,* 74 Ill.App.3d 633, 639–40, 30 Ill.Dec. 727, 732, 393 N.E.2d 1074, 1079 (1st Dist. 1979); *Farrell v. Lincoln National Bank,* 24 Ill.App.3d 142, 146, 320 N.E.2d 208, 212 (1st Dist. 1974). Applying the law to count I of the complaint, the court concludes that Gruetzmacher has not established any facts to show that Kenngott was Massey-Ferguson's agent with authority to bind Massey-Ferguson to a contract with Gruetzmacher. Rather, the record before the court establishes that Massey-Ferguson and Stearns had a contract which expressly stated that Massey-Ferguson would not be bound by the acts of third parties. (Memorandum in Support of the Motion for Summary Judgment, Exhibit B. *See* note 1 *supra.*) Stearns in turn disclosed to Kenngott that Kenngott had no authority to hire a third party. (Deposition of Gordon Kenngott at 58; Deposition of James Stearns at 67–69.) Kenngott then told Gerk that Stearns had an agreement with Massey-Ferguson and that Kenngott and Stearns—not Massey-Ferguson—had agreed to share any commission among all brokers or finders. (Deposition of Gordon Kenngott at 65–66; Deposition of George Gerk at 13–15. *See* note 2 *supra.*) Moreover, Kenngott admitted that he had no contract with Massey-Ferguson with regard to a finder's fee. (Deposition of Gordon Kenngott at 70.) Thus, the court finds that there is no genuine issue of material fact regarding the lack of a principal-agent relationship between Massey-Ferguson and Kenngott.[4] Accordingly, the court concludes that Massey-Ferguson is entitled to a judgment as a matter of law on count I of the complaint.[5]

---

**4.** The affidavit of George Gerk, which was submitted in support of Gruetzmacher's memorandum in opposition to the motion for summary judgment, states that, at the time he "submitted" the Massey-Ferguson lawn and garden "divestment" to Fuqua, Gerk "believed a finders fee would be paid." (Affidavit of George Gerk at p. 2.) There is no statement by Gerk that he believed Kenngott to be Massey-Ferguson's agent. Indeed, Gerk's statements in his deposition indicate the contrary. (Deposition of George Gerk at 13–15.) Thus, Gerk has failed to set forth specific facts showing a genuine issue of material fact regarding the lack of a principal-agent relationship between Massey-Ferguson and Kenngott as required under Federal Rule of Civil Procedure 56(e).

**5.** In its response to the motion for summary judgment, Gruetzmacher apparently contends that the issue in count I is whether Stearns had the "authority" to delegate his agency status to Kenngott. A principal may be bound by his agent in three situations: where the agent is actually authorized to bind the principal; where the agent is apparently authorized; and where the agent had inherent power arising from the agency relationship. *Roscoe Co. v. Lewis University,* 79 Ill.App.3d 1098, 1101, 35 Ill.Dec. 133, 136, 398 N.E.2d 1083, 1086 (1st Dist. 1979). "Apparent authority" is that au-

Count II of the complaint is based upon the theory of quantum meruit wherein Gruetzmacher alleges an implied-in-law contract with Massey-Ferguson which would permit Gruetzmacher to recover for expending efforts on behalf of Massey-Ferguson. Under Illinois law, an implied-in-law contract arises independent of any agreement or consent by the parties. *Arthur Rubloff & Co. v. Drovers National Bank*, 80 Ill.App.3d 867, 875, 36 Ill.Dec. 194, 200, 400 N.E.2d 614, 620 (1st Dist. 1980); *Beatrice Foods Co. v. Gallagher*, 47 Ill. App.2d 9, 25, 197 N.E.2d 274, 283 (4th Dist. 1964). An implied-in-law contract is equitable in nature and predicated upon the principle that one should not be unjustly enriched at another's expense. *See Panorama of Homes, Inc. v. Catholic Foreign Mission Society, Inc.*, 84 Ill.App.3d 142, 148, 39 Ill. Dec. 513, 518, 404 N.E.2d 1104, 1109 (2d Dist. 1980); *First National Bank of Lincolnwood v. Glenn*, 132 Ill.App.2d 322, 324, 270 N.E.2d 493, 495 (1st Dist. 1971); *Anderson v. Gewecke*, 36 Ill.App.3d 170, 175, 343 N.E.2d 673, 677 (1st Dist. 1976). The elements required to recover under the implied-in-law or quantum meruit theory include proof that the plaintiff performed the services and receipt by the defendant from the plaintiff of a benefit which it would be unjust for the defendant to retain without paying the plaintiff. *Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.*, 87 Ill.App.3d 480, 486, 42 Ill.Dec. 360, 366, 408 N.E.2d 1069, 1075 (1st Dist. 1980); *O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.*, 51 Ill.App.3d 11, 15, 8 Ill.Dec. 78, 81, 365 N.E.2d 316, 319 (3d Dist. 1977); *Nardi & Co. v. Allabastro*, 20 Ill.App.3d 323, 326, 314 N.E.2d 367, 370 (1st Dist. 1974). *But see Arthur Rubloff & Co. v. Drovers National Bank*, 80 Ill.App.3d 867, 875, 36 Ill.Dec. 194, 200, 400 N.E.2d 614, 620 (1st Dist. 1980).

Applying the law to the facts of the present case, the court concludes that there is a genuine issue of a material fact as to whether an implied-in-law contract exists between Gruetzmacher and Massey-Ferguson. Accordingly, the motion for summary judgment on count II of the complaint is denied.[6]

Regarding Stearns' motion for leave to file an amended counterclaim,[7] count I of the amended counterclaim concerns Stearns' contract with Massey-Ferguson to locate a purchaser for Massey-Ferguson's lawn and garden business. Count I contains the same allegations as Stearns' original counterclaim. Counts II and III of the amended counterclaim, however, concern this same contract as it relates to Stearns locating a purchaser for Badger Northland, Inc. ("Badger"), a different Massey-Ferguson enterprise. Massey-Ferguson filed an objection to Stearns' motion for leave to file

---

thority which the principal knowingly permits the agent to assume or which he holds his agent out as possessing. *See Yale Development Co. v. Texaco, Inc.*, 51 Ill.App.3d 616, 619, 9 Ill.Dec. 381, 383, 366 N.E.2d 892, 894 (2d Dist. 1977). Given the specific prohibition in the contract with Massey-Ferguson, Stearns did not possess actual authority to bind Massey-Ferguson to the acts of Kenngott. Stearns' statements to Kenngott regarding the Massey-Ferguson contract and Kenngott's conversations with Gerk show that Stearns did not possess any apparent authority to bind Massey-Ferguson to the acts of Kenngott. Nor did Stearns possess any inherent power to bind Massey-Ferguson to the acts of Kenngott. *See generally* Restatement (Second) of Agency § 140 (1957).

6. Another argument set forth in support of Massey-Ferguson's motion for summary judgment is that Gruetzmacher acted as Fuqua's agent, thereby precluding Gruetzmacher from recovering any commission from Massey-Ferguson. The court did not reach this issue in count I of the complaint since it granted summary judgment on other grounds. As to count II of the complaint, the court finds a genuine issue of material fact regarding the question of whether Gruetzmacher acted as Fuqua's agent and thus is precluded from recovering a commission from Massey-Ferguson. Accordingly, the motion for summary judgment on count II of the complaint is denied based upon this argument as well.

7. Stearns filed his amended counterclaim and subsequently Massey-Ferguson filed "objections" to Stearns' motion to file an amended counterclaim. The court construes the pleadings as constituting a motion for leave to file an amended counterclaim pursuant to Federal Rule of Civil Procedure 13(f).

the amended counterclaim. In its motion, Massey-Ferguson contends that the filing of counts II and III will prejudice Massey-Ferguson as well as needlessly complicate and delay the case which is presently before the court. In response to Massey-Ferguson's objection, Stearns apparently contends that counts II and III of the amended counterclaim are compulsory counterclaims under Federal Rule of Civil Procedure 13(a).

Federal Rule of Civil Procedure 13(a) provides that a counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed.R.Civ.P. 13(a). The purpose of rule 13(a) is to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. *Southern Construction Co. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 111, 9 L.Ed.2d 31 (1962). In *Warshawsky & Co. v. Arcata National Corp.*, 552 F.2d 1257 (7th Cir. 1977), the Seventh Circuit concluded that the "logical relationship" test is crucial for the purposes of defining a compulsory counterclaim under rule 13(a). *Id.* at 1263. Thus, the term "transaction" found in rule 13(a) is "a word of flexible meaning [which] may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id.* at 1261. This definition of the term "transaction" is to be "construed generously to avoid the unnecessary expense inherent in multiplicity of litigation." *Id.* The Seventh Circuit in *Warshawsky* further defined compulsory as opposed to permissive counterclaims: "A counterclaim that arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim is compulsory and falls under Rule 13(a); a counterclaim that has its roots in a separate transaction or occurrence is permissive and is governed by Rule 13(b)." *Id.*

Applying this standard to the facts of the present case, the court concludes that Stearns' counterclaim is not compulsory under rule 13(a). Massey-Ferguson's claim [8] against Stearns is based upon its contract with Stearns whereby Stearns was to locate a purchaser for Massey-Ferguson's lawn and garden business. The commission for the sale of the lawn and garden business is the subject of the original complaint filed in this case by Gruetzmacher against Massey-Ferguson. Counts II and III of the amended counterclaim, however, concern the purchaser of Badger, another Massey-Ferguson enterprise. The only connection between the two businesses is that Stearns was retained as an agent to locate purchasers for the businesses in the same letter of confirmation sent to Stearns by Massey-Ferguson. (Amended Counterclaim, Exhibit B.) The letter outlines Stearns' obligations as Massey-Ferguson's agent in general terms and refers to a list attached to the letter which contains the various Massey-Ferguson businesses for which Stearns was to locate purchasers. The lawn and garden business and Badger are two of the three businesses included on the list. The court finds that, for rule 13(a) purposes, Stearns' agreement to locate a prospective purchaser for Badger does not arise out of the same transaction or occurrence that is the subject matter of Massey-Ferguson's claim against Stearns.[9] Therefore, Stearns' claim against Massey-Ferguson regarding the Badger acquisition is a permissive counterclaim governed by Federal Rule of Civil Procedure 13(b).

Federal Rule of Civil Procedure 13(b) permits a party to assert as a counterclaim "any claim against an opposing party not arising out of the transaction or occurrence

---

**8.** Massey-Ferguson's claim is in the form of a third party complaint against Stearns and Kenngott for indemnity for any commission which Massey-Ferguson may owe to Gruetzmacher.

**9.** Stearns' agreement with Massey-Ferguson to locate a purchaser for Badger also does not arise out of the same transaction or occurrence that is the subject matter of the original complaint by Gruetzmacher against Massey-Ferguson.

that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(b). A permissive counterclaim must be supported by an independent ground for federal jurisdiction. *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir.), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974). Moreover, Federal Rule of Civil Procedure 13(f) permits a party to move for leave to file a counterclaim where the pleader has failed to set up the counterclaim through inadvertence or excusable neglect and wishes to set up the counterclaim by amendment. Fed.R.Civ.P. 13(f). The court, in its discretion, may deny leave to file an amended counterclaim under rule 13(f) where, for example, prejudice to the parties will result or where the omitted counterclaim can be brought as an independent action. 3 Moore's Federal Practice ¶ 13.33, 13.18 at 13–459 (2d ed. 1980); C. Wright & A. Miller, 6 *Federal Practice and Procedure: Civil* § 1430 at 153–54 (1971).

■ Applying this standard to the facts of the present case, the court concludes that undue prejudice will result to the parties if the amended permissive counterclaim is filed. The amended permissive counterclaim alleges the separate Badger transaction which involves new parties and issues. The proposed amended counterclaim in the present case obviously can be brought as an independent cause of action. Moreover, Stearns' original counterclaim regarding the lawn and garden business is still before the court. Thus, the court denies the motion for leave to file the amended counterclaim.

Accordingly, the motion for summary judgment is granted as to count I of the complaint and denied as to count II of the complaint and the motion for leave to file an amended counterclaim is denied. Status is set for April 28, 1981 at 10:00 a. m.

It is so ordered.