VERN LUNDBERG et al., d/b/a Pam Dee L. Farm, Plaintiffs-Appellees, v. CHURCH FARM, INC., Defendant-Appellant.

Second District No. 2—85—1030

Opinion filed December 31, 1986.

454

Murphy, Timm, Lennon, Spesia & Ayers, of Joliet, for appellant.

Peter Alexander, of Alexander & Cicero, P.C., of Rockford, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Church Farm, Inc., appeals from the judgment of the circuit court of Winnebago County awarding the plaintiffs $147,000 following a jury verdict in their favor in this breach of contract action.

The facts in this case can fairly be summarized as follows. Gilbert Church and a silent partner are the sole owners of defendant, Church Farm, Inc. (Church Farm), a corporation located in Manteno and engaged in the business of breeding thoroughbred race horses. Gil Church also owns an unrelated business called Acme Propane, Inc. (Acme). Plaintiffs, Vern and Gail Lundberg, also breed thoroughbred race horses as Pam Dee L. Farm in Rockford. Herb Bagley was the farm manager at Church Farm. Church Farm purchased a very well bred stallion called Imperial Guard for approximately $700,000, and in February 1982, Gil Church placed a full center-page ad in the Racing Form, a publication directed to the horse breeding and racing commu-

nity, advertising Imperial Guard for breeding and/or syndication. The ad listed the cost of breeding rights, convertible to a single syndication share, as $50,000, and directed all inquiries to "Herb Bagley, Manager."

Vern Lundberg spoke with Herb Bagley by telephone frequently and met with him several times at Church Farm to discuss Imperial Guard. On April 10, 1982, Lundberg and Bagley executed two agreements, intended as a single contract, on preprinted forms. The first document, the breeding rights package, entitled the buyer to three breeding rights to Imperial Guard in the 1982 and 1983 breeding seasons, subject to approval of the mares "by CHURCH FARMS, INC. where IMPERIAL GUARD stands, or his proper representative." The package was to convert to one share upon the syndication of Imperial Guard in 1984. (Upon syndication, ownership of the horse would be divided into 40 shares, so that an owner of one share essentially would own a one-fortieth interest in the horse and would be entitled to name one of approximately 40 mares to be bred to the stallion each year.) In addition, Herb Bagley added the following language by hand to the signature page of the breeding rights package:

"I Herbert F. Bagley here by agree to guarantee to Vern Lundberg 6 live foals in the first two years of this contract.
H. Bagley."

The price of the package was $50,000—$25,000 due immediately and $25,000 due on January 15, 1983, with 12% interest. The breeding rights package contained signature lines for both Gilbert Church ("CHURCH FARM, INC. Gilbert G. Church, Pres.") and Herb Bagley ("Herbert F. Bagley Farm Mgr.") as sellers. Bagley signed his own signature line and wrote "Gilbert G. Church by H. Bagley" on Church's line. Vern Lundberg also signed the document.

The second document, the syndicate agreement, provided that the horse would "stand" at Church Farm, Inc., unless and until 50% of the shareholders voted to move him elsewhere. The other provisions of that document are not relevant here. The syndicate agreement provided only one signature line for the seller, which read "CHURCH FARM, INC." Herb Bagley signed on this line as "Church Farm Inc. H. Bagley Mgr." Vern Lundberg and a witness also signed this document. Vern Lundberg then gave Bagley a $25,000 check, which was deposited in Church Farm's account by Gil Church's secretary at Acme, where Church Farm's records were kept.

During the 1982 breeding season, Lundberg bred four mares to Imperial Guard, which resulted in the birth of one live foal. Late in 1982, between the 1982 and 1983 breeding seasons, Gil Church moved

Imperial Guard to Oklahoma without giving notice to the plaintiffs. When the Lundbergs learned of the move, they complained to Church, who offered to transport their mares to Oklahoma with his own, although they would have to pay their own transportation costs. In addition, he offered to pay the $500 "chute fee" charged in Oklahoma for unloading horses. The Lundbergs refused. The horse remained in Oklahoma over their objection throughout the 1983 breeding season. The Lundbergs did not pay the $25,000 due on the contract in January 1983, claiming that Church breached the contract by moving the horse. They filed suit in September 1983. Church Farm filed a counterclaim for the remaining payment.

At trial, Gil Church testified as an adverse witness that he had approved the ad listing Bagley as manager, that Bagley was in fact his farm manager and had lived on the farm, but was authorized only to present the preprinted contracts to potential buyers. Bagley was not authorized to sign the contracts for Church Farm or to change or add terms. Church admitted that the only way potential buyers would know to contact him (Church) as owner would be if Herb Bagley told them to do so. He stated that Bagley had left his employment for unrelated reasons shortly after the Lundberg contract was signed. He testified that six or seven breeding rights packages had been sold to other purchasers on the preprinted forms, but that no terms had been added or changed on those contracts and they were signed by Church himself, not Bagley. He was able to produce only two of those documents, however, stating that he had not kept copies of the others. He stated that, while he knew Lundberg and Bagley had signed a contract, he assumed that it contained only the preprinted terms and did not see the signed documents until the Lundbergs filed suit. In addition, he stated that in 1983 and 1984, he sold six syndicate shares in Imperial Guard for $125,000 each.

Vern Lundberg testified that he dealt exclusively with Herb Bagley and never met or saw Church until five months after the contract was signed. He testified that Bagley lived on Church Farm and was the only person there to deal with. Most of Lundberg's testimony related to statements made to him by Bagley, who was not called as a witness by either party. Bagley told Lundberg that, because the horse was to be registered in Illinois, he preferred Illinois purchasers and would therefore guarantee six live foals to Lundberg, regardless of how many mares would have to be bred to Imperial Guard in the 1982 and 1983 seasons to accomplish that. In addition, he told Lundberg that the horse was to remain in Illinois until syndication in 1984 and that the contract language requiring approval of mares by "CHURCH

FARMS, INC. where IMPERIAL GUARD stands," guaranteed that the horse would remain at Church Farm. Bagley also told Lundberg that he (Bagley) was the syndicate manager.

Each party called a horse-breeding expert as a witness. Both experts stated that the term "stands" simply refers to the place the horse is located. Plaintiffs' expert stated that a manager in the business ordinarily has authority to negotiate and sign contracts for the owners. Defendant's expert stated that a manager does not necessarily have that authority. She also stated that a general manager usually has more authority than a farm manager. Plaintiffs' expert valued five foals sired by Imperial Guard at between $40,000 and $50,000, cumulatively, while defendant's expert valued them at between $10,000 and $30,000, cumulatively, and valued Imperial Guard at only $100,000.

Defendant raises four arguments on appeal: (1) that Vern Lundberg's testimony regarding out-of-court statements made to him by Herb Bagley was inadmissible hearsay; (2) that admission of testimony regarding Bagley's guarantee that Imperial Guard would remain in Illinois violated the parol evidence rule; (3) that the jury's verdict was contrary to the manifest weight of the evidence, and (4) that the court's instructions to the jury were incomplete and improper. We affirm the circuit court's decision.

Defendant first argues that out-of-court statements made by an adverse party's agent are not admissible under the admission exception to the hearsay rule unless the proponent first conclusively establishes that the declarant was in fact the agent of an adverse party and that the statements were within the scope of his authority. See *Chmieleski v. Venture Stores, Inc.* (1982), 106 Ill. App. 3d 312; *Kapelski v. Alton & Southern R.R.* (1976), 36 Ill. App. 3d 37.

Hearsay is "testimony of an out-of-court statement offered to establish the truth of the matter asserted therein, and resting for its value upon the credibility of the out-of-court asserter." (*People v. Rogers* (1980), 81 Ill. 2d 571, 577; *People v. Camp* (1984), 128 Ill. App. 3d 223, 228-29.) If the statement is offered to demonstrate something other than the truth of the matter asserted, its value does not rest on the credibility of the declarant, and the testimony is admissible. (128 Ill. App. 3d 223, 230; *Reynolds v. Alton & Southern Ry. Co.* (1983), 115 Ill. App. 3d 88, 98.) One authority states that "the fact that the statement was made is relevant for its effect on the listener without regard to the truth of the matter asserted." E. Cleary & M. Graham, Illinois Evidence sec. 801.5, at 517 (4th ed. 1984).

The intentions of the parties are clearly relevant in the for-

mation of a contract. (See, *e.g.*, *Hackett v. Ashley* (1979), 71 Ill. App. 3d 179, 186-87.) And, where the state of mind of the declarant (71 Ill. App. 3d 179, 186-87), or of the listener (see *Heller v. Jonathan Investments, Inc.* (1985), 135 Ill. App. 3d 350, 358), is relevant to a material issue in the case, out-of-court statements offered to demonstrate state of mind are admissible as proof of that issue. (See *Bassett v. Burlington Northern R.R. Co.* (1985), 131 Ill. App. 3d 807, 815.) Bagley's out-of-court statements are not inadmissible hearsay because they were not offered to demonstrate the truth of those statements, but simply to show that the statements were made (see, *e.g.*, *Northern Trust Co. v. American Airlines, Inc.* (1985), 142 Ill. App. 3d 21, 38 (out-of-court statements clearly admissible if offered simply to show statements were made); *Daehler v. Oggoian* (1979), 72 Ill. App. 3d 360, 368 (admissible to show option contract formed)) and to demonstrate Bagley's and Vern Lundberg's purported intentions.

The two cases cited by defendant (*Chmieleski v. Venture Stores, Inc.* (1982), 106 Ill. App. 3d 312; *Kapelski v. Alton & Southern R.R.* (1976), 36 Ill. App. 3d 37), are clearly inapposite. In both cases the agents made out-of-court statements admitting the defendant's liability, and the statements were offered by the plaintiffs to demonstrate their truth. By contrast, it is immaterial in the present case whether or not Bagley actually believed that Imperial Guard would remain in Illinois until 1984 or whether he was in fact the syndicate manager. His statements were not offered as authoritative interpretations of contract language, but simply to show that they were made to Lundberg, who relied on them, and that those were the terms contemplated by Bagley and Lundberg when the contract was signed. The value of the testimony depended on the credibility of Lundberg, who testified at trial and was cross-examined there by defendant, rather than that of Bagley. Whether Bagley's statements could properly be attributed to Gil Church or Church Farm depends on the scope of Bagley's agency—a question of fact which the trial court properly left to the jury. See *Milwaukee Mutual Insurance Co. v. Wessels* (1983), 114 Ill. App. 3d 746, 749; *St. Ann's Home for the Aged v. Daniels* (1981), 95 Ill. App. 3d 576, 579.

Defendant next contends that it was reversible error for the court to admit testimony concerning Bagley's representations that Imperial Guard would remain in Illinois until syndication was complete. Lundberg testified that Bagley made the statements to him prior to execution of the contract. Defendant argues that the testimony was improperly admitted either because it added a term to a written contract which was complete on its face or because it offered an alternative in-

terpretation of an unambiguous contract term. We disagree.

Defendant made a motion *in limine* on the day of the trial requesting exclusion of the testimony. The court had no opportunity to carefully review the motion and tentatively ruled that the evidence was admissible to interpret the contract, stating that specific objections could be made at trial. Defendant failed to object when the evidence was introduced. Where no objection is made to improper evidence at the time of its admission, the objection is waived. (See, *e.g.*, *Graves v. North Shore Gas Co.* (1981), 98 Ill. App. 3d 964, 973.) However, because the defendant may genuinely have interpreted the court's ruling as conclusively admitting the evidence, we believe that it is appropriate to ignore the waiver doctrine here. See, *e.g.*, *Eddings v. Dundee Township Highway Commissioner* (1985), 135 Ill. App. 3d 190, 200.

Extrinsic evidence is not admissible to demonstrate a meaning contrary to the terms of an unambiguous contract. (See *Weiland Tool & Manufacturing Co. v. Whitney* (1969), 44 Ill. 2d 105, 114; *Susmano v. Associated Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 220-21.) However, parol evidence concerning negotiations and prior agreements is admissible where the contract is found to be ambiguous. (*Richards v. Liquid Controls Corp.* (1975), 26 Ill. App. 3d 111, 120.) A contract is ambiguous if it is "capable of being understood in more than one sense [citation] or *** obscure in meaning through indefiniteness of expression ***." *Mid-City Industrial Supply Co. v. Horwitz* (1985), 132 Ill. App. 3d 476, 481; *Pioneer Trust & Savings Bank v. Lucky Stores, Inc.* (1980), 91 Ill. App. 3d 573, 575.

The breeding rights package provides that mares chosen for breeding to Imperial Guard must first be approved "by CHURCH FARMS, INC. where IMPERIAL GUARD stands, or his proper representative." Plaintiffs contend that the language represents that Imperial Guard will stand at Church Farm during the two-year life of the contract. Defendant apparently argues that the phrase "where IMPERIAL GUARD stands" requires the additional approval of mares at any location Imperial Guard stands and cannot modify "CHURCH FARMS, INC." at all, because the latter is an entity name, not a location. However, the entity name is used again in the syndicate agreement, which provides that "IMPERIAL GUARD shall stand at stud at CHURCH FARM, INC." We find defendant's interpretation contrived and irrational, and we will not give it effect. (See *Epstein v. Yoder* (1979), 72 Ill App. 3d 966, 973.) At the very least, the disputed phrase is superfluous, and at most, it does appear to make some representation as to where the horse will be located. Because all contract

provisions are presumed to have a purpose (*Bruno Benedetti & Sons, Inc. v. O'Malley* (1984), 124 Ill. App. 3d 500, 506), we conclude that the language cannot be disregarded and that the trial court properly admitted extrinsic evidence to determine the intentions of the parties. (See *Harris Trust & Savings Bank v. Hirsch* (1983), 112 Ill. App. 3d 895, 899 (contract should be construed to give effect to parties' intentions); *Rootberg v. Richard J. Brown Associates* (1973), 14 Ill. App. 3d 301, 304 (give contract the construction mutually understood by the parties).) We find no merit to defendant's claim that the extrinsic evidence effectively added a term to the contract.

■■ ■ Defendant's next contention is that the jury's verdict and the size of its award were contrary to the manifest weight of the evidence. Specifically, defendant contends that plaintiffs have failed to establish that Bagley had apparent authority to negotiate and sign the Lundberg contract for Church Farm, and that, even if Bagley did act within his apparent authority, defendant's act in moving the horse out of State was not a material breach of that contract.

The party asserting an agency has the burden of proving its existence (*Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc.* (1985), 138 Ill. App. 3d 574, 582), but may do so by inference and circumstantial evidence (*City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 518; *St. Ann's Home for the Aged v. Daniels* (1981), 95 Ill. App. 3d 576, 579; *Schoenberger v. Chicago Transit Authority* (1980), 84 Ill. App. 3d 1132, 1137). Additionally, an agent may bind his principal by acts which the principal has not given him *actual* authority to perform, but which he *appears* authorized to perform. (*Sztorc v. Northwest Hospital* (1968), 146 Ill. App. 3d 275, 278; *Yale Development Co. v. Texaco, Inc.* (1977), 51 Ill. App. 3d 616, 619.) An agent's apparent authority is that authority which "the principal knowingly permits the agent to assume or which he holds his agent out as possessing. It is the authority that a reasonably prudent man, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." (*Hofner v. Glenn Ingram & Co.* (1985), 140 Ill. App. 3d 874, 882; *Wing v. Lederer* (1966), 77 Ill. App. 2d 413, 417.) The agent's authority must be derived from some act or statement of the *principal*. (*Hofner v. Glenn Ingram & Co.* (1985), 140 Ill. App. 3d 874, 880.) Defendant argues that plaintiffs' proof is based on Bagley's own assertions of authority rather than the acts or statements of Church Farm or Gil Church. We disagree.

Plaintiffs produced evidence at trial that Gil Church approved the Imperial Guard advertisement listing Herb Bagley as Church Farm's

manager and directing all inquiries to him. Church also permitted Bagley to live on the farm and to handle its daily operations. Bagley was the only person available to visitors to the farm. Bagley answered Church Farm's phone calls, and there was a preprinted signature line for him on the breeding rights package.

 The conclusion is inescapable that Gil Church affirmatively placed Bagley in a managerial position giving him complete control of Church Farm and its dealings with the public. We believe that this is just the sort of "holding out" of an agent by a principal that justifies a third person's reliance on the agent's authority. See *Sztorc v. Northwest Hospital* (1986), 146 Ill. App. 3d 275, 278-79 (patient may reasonably assume physician is agent of hospital); *Yale Development Co. v. Texaco, Inc.* (1977), 51 Ill. App. 3d 616, 619 (where principal knowingly permits agent to deal with third persons in contract negotiations, agent has apparent authority to bind principal). See also *Schoenberger v. Chicago Transit Authority* (1980), 84 Ill. App. 3d 1132, 1138 (noting that apparent authority exists when principal allows public to deal exclusively with agent).

 ██ We cannot accept defendant's contention that the Lundbergs were affirmatively obligated to seek out Church to ascertain the actual extent of Bagley's authority. Where an agent has apparent authority to act, the principal will be liable in spite of any undisclosed limitations the principal has placed on that authority. (See, *e.g., Sztorc v. Northwest Hospital* (1986), 146 Ill. App. 3d 275, 278; *Lou Bachrodt Chevrolet, Inc. v. Greve* (1977), 48 Ill. App. 3d 954, 958.) We also reject defendant's argument that plaintiffs used Bagley's own out-of-court assertions to establish his authority. The only testimony presented concerning Bagley's representations of his own authority was a statement by Vern Lundberg that Bagley claimed to be the syndicate manager. While an agent's statement's are ordinarily not admissible to establish the existence of an agency, they can be admitted "where sufficient other facts relating to the transaction [have been] adduced." (*O'Boyle v. Greco Excavating Co.* (1972), 9 Ill. App. 3d 234, 238.) Here, the other evidence presented was so extensive that the admission of this particular statement was clearly insignificant.

 ██ Defendant argues that even if Bagley had apparent authority to bind Church Farm, the defendant did not materially breach the contract by moving the horse to Oklahoma for the 1983 breeding season. Whether or not a breach of contract is "material," thereby discharging the other's duty to perform, is a question to be decided on " 'the inherent justice of the matter.' " (*Hanson v. Duffy* (1982), 106 Ill. App. 3d 727, 732, quoting *Leazzo v. Dunham* (1981), 95 Ill.

App. 3d 847, 850.) Plaintiffs expected to breed enough mares to Imperial Guard in 1983 to obtain five live foals. By defendant's own admission, plaintiffs would have had to pay a minimum of $710 per mare to transport them to Oklahoma and back. In addition, plaintiffs testified that they signed the contract relying on Bagley's guarantee that Imperial Guard would remain at Church Farm because they preferred to transport their own mares for safety reasons and only sent them to farms they had personally seen and found to be clean and safe. It is well settled that a reviewing court will not disturb the findings of the trier of fact unless clearly against the manifest weight of the evidence. (See, *e.g., Yale Development Co. v. Texaco, Inc.* (1977), 51 Ill. App. 3d 616, 619.) The jury's findings here were well supported by the evidence.

■■ We summarily reject defendant's contention that the amount of the jury's award was excessive. The evidence very clearly supports the award, and defendant's argument amounts to a contention that the jury erred in accepting one witness' valuation of damages over another's. See, *e.g., Zelinski v. Security Lumber Co.* (1985), 133 Ill. App. 3d 927, 932 (evaluating the demeanor of witnesses and the weight to be given conflicting evidence are issues peculiarly within the province of the jury).

■■ Defendant's final contention is that the trial court's instructions to the jury were erroneous and incomplete. We will first consider defendant's objection to two instructions given by the trial court.

Plaintiffs' instruction No. 10, a modified version of Illinois Pattern Jury Instruction, Civil, No. 50.04 (2d ed. 1971) (hereinafter cited as IPI Civil 2d), provided in pertinent part:

> "If you find that Herbert Bagley was the agent of the defendant *** then any act or representations of Herbert Bagley *** was in law the act or representations of the defendant ***.
>
> If you find that Herbert Bagley was not acting as the agent of the defendant *** or if you find that Herbert Bagley was acting outside the scope of his authority *** then the act or representations of Herbert Bagley are not the acts or representations of the defendant ***."

We agree with the defendant that the first portion of this instruction, if given alone, would have greatly oversimplified the agency issue to the defendant's prejudice. However, the appropriate question is whether the instructions as a whole were sufficiently clear so as not to mislead the jury and to fairly and correctly state the law. (*Kor-*

*palski v. Lyman* (1983), 114 Ill. App. 3d 563, 568.) We find that any confusion created by the first paragraph was cured by the inclusion of the second, which the trial court itself modified to emphasize that Bagley must have been acting within the scope of his authority to bind the defendant. In addition, the issue was further clarified by the inclusion of IPI Civil 2d No. 50.06 explaining the scope-of-authority concept.

Defendant next objects to the instruction given concerning plaintiff's burden of proof (IPI Civil 2d No. 21.05) because it did not specifically state that plaintiffs had the burden of establishing that an agency existed and the scope of that agency. Where a party fails to tender an instruction, he waives the right to object to its omission. (*Korpalski v. Lyman* (1983), 114 Ill. App. 3d 563, 567.) Defendant did not offer an instruction containing the language described and has therefore waived any right to object to its omission.

Defendant also objects to the court's refusal to give two instructions tendered by it. The court instructed the jury that "[a]pparent authority arises when a principal through words or conduct creates a reasonable impression that an agent has authority to perform a certain act." It refused to give defendant's instruction No. 15, which added that apparent authority "cannot be based on anything the agent himself has said or done." We find no error because the instruction given was accurate and complete. See *Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 929.

The trial court also refused defendant's instruction No. 16, which provided that "[w]hen an agreement is reduced to writing, *** it is presumed that the parties introduced into the agreement every material item and term." A jury instruction should be given only where the evidence supports the theory it expresses. (94 Ill. App. 3d 915, 929.) We conclude that the instruction was properly omitted because, as previously discussed, extrinsic evidence was introduced to interpret an ambiguous phrase in the contract, not to add any terms to it.

For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

Affirmed.

REINHARD and WOODWARD, JJ., concur.