**SOUTHERN PACIFIC COMPANY,**
**Appellant,**

v.

**Lloyd M. MAHL, Sr., Appellee.**

**No. 25937.**

United States Court of Appeals
Fifth Circuit.

Feb. 11, 1969.
Opinion On Rehearing March 24, 1969.
See 409 F.2d 229.

Harry McCall, Jr., Chaffe McCall, Phillips, Burke, Toler & Sarpy, New Orleans, La., for Southern Pac. Co.

Ivor A. Trapolin, New Orleans, La., for Lloyd M. Mahl, Sr.

Before WISDOM, THORNBERRY and GOLDBERG, Circuit Judges.

THORNBERRY, Circuit Judge:

These appeals arise out of an action instituted by Lloyd Mahl to recover damages for personal injuries sustained while he was attempting to uncouple two railroad cars in the course of his employment for the defendant railroad. The evidence indicates that Mahl, after signalling the engineer for slack, attempted to uncouple the cars by pulling a lever which extends from the outside corner of the car and is linked to the coupler pin between the cars, but the uncoupling mechanism failed to release. He again called for slack and repeated the process, but again the mechanism failed to release. He signalled the engineer for a third try, when he applied "great but reasonable force," still without success, and in the process suffered a severe strain to his body.

 The complaint specified two counts under the Federal Employers' Liability Act, one alleging negligence,[1] the other alleging that the uncoupling device was defective in violation of the Federal Safety Appliance Act. The case was tried to a jury who found that the defendant was not negligent, but that it had violated the Safety Appliance Act, that the injury resulted from this violation, and that the total amount of plaintiff's damages was $65,000. Judgment was entered accordingly. The railroad appeals, alleging that the trial court erred in its charge on the Safety Appliance Act.[2] The plaintiff cross-appeals, alleg-

1. This count of the complaint alleged that the coupler of the type in use on the car was negligently designed, whereas the second count alleged that the specific coupler involved in the accident, even if properly designed, was defective.

2. The railroad also alleges as error the refusal of the trial court to permit it to show a film demonstrating the operation of the *type* of uncoupling device in ques-

tion. The railroad states in its brief that "the film was not offered to show operation of the particular coupler that plaintiff sought to manipulate, *but to disprove the allegation and testimony that the design was defective.*" The issue of defective design, however, was posed under the negligence count of the case which was decided in the railroad's favor. Moreover, inasmuch as the film would only show that *some* of these devices worked properly, it

ing error by the trial court in its treatment of the negligence count of the complaint. Finding no error in the trial court's charge on the Safety Appliance Act, we affirm the judgment awarding damages to the plaintiff and therefore do not consider his cross-appeal on the negligence count.

The applicable provision of the Federal Safety Appliance Act provides:

> It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used in its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and *which can be uncoupled without the necessity of men going between the ends of the cars.* (Emphasis added.)

45 U.S.C. § 2.

The trial judge instructed the jury that:

> This statute is not intended simply for the protection of the employees going between the cars to uncouple them. *Thus, it is not necessary for the Plaintiff to show that he had to go between the cars in order to uncouple them.*
>
> \* \* \* \* \* \*
>
> The duty imposed by the Safety Appliance Act making it unlawful for railroad companies to use cars not equipped with couplers which can be uncoupled without the necessity of men going between the ends of the cars is an absolute duty requiring performance on each occasion in question.
>
> Thus if you should find from the evidence that on the occasion in question the coupler was operated by the Plaintiff with due care in the normal manner but failed to uncouple on the particular occasion in question, it is immaterial whether the coupler func-

tioned properly before or after the particular occasion in question. (Emphasis added)

The railroad argues that a violation of the Safety Appliance Act predicated upon the failure of a mechanism to *uncouple* cannot be established without proof of "the necessity of men going between the ends of the cars." Although the Act requires that *coupling* be accomplished automatically, there is no requirement that *uncoupling* be automatic, and the mere failure to uncouple, as distinguished from failure to couple, does not constitute a violation of the Act. The failure of a coupling device to uncouple may result from the *absence of slack*, rather than from a defect in the mechanism. Accordingly, Congress did not require that uncoupling be automatic, but instead made the necessity of going between the cars the criterion of the statutory violation. Therefore, it is argued, plaintiff's failure to show that it was necessary for him to go between the ends of the cars in order to uncouple them obviates his claim for relief under the Act, and the trial judge's instructions to the contrary constitute reversible error.

▮▮ We think that this position is foreclosed by the broad purpose of the Safety Appliance Act to assure the safety of railroad employees by requiring the railroads to furnish safe appliances for the coupling of cars. See Minneapolis & St. Louis R. Co. v. Gotschall, 1917, 244 U.S. 66, 37 S.Ct. 598, 61 L.Ed. 995. "The risk in coupling and uncoupling was the evil sought to be remedied," Johnson v. Southern Pacific Co., 1904, 196 U.S. 1, 19, 25 S.Ct. 158, 162, 49 L.Ed. 363, and that risk was to be obviated by the use of couplers coupling automatically by impact and uncoupling without the necessity of men going between the ends of the cars. The duty to furnish the type of

---

is unlikely that the exclusion of the film affected the verdict in plaintiff's favor under the Safety Appliance Act, which requires that the particular appliance work

on the occasion in question. Accordingly, even if error, the exclusion of the film was not prejudicial.

couplers specified by the statute is plainly imposed. But we think the statute requires more. As one court has stated:

> It is not only the duty of the railroad to provide such couplers, but to keep them in such operative conditions that they will always perform their functions. *The test of compliance is the operating efficiency of the couplers with which the car is equipped.* (Emphasis added.)

Chicago, St. P., M. & O. Ry. Co. v. Muldowney, 8th Cir. 1942, 130 F.2d 971, 975. In short, the railroad is obligated to provide safe couplers that function without exposing employees who operate them to the risk of bodily harm. But under the interpretation urged upon us by the railroad, the use of a coupling device, no matter how dangerous it might prove on occasion to the employees charged with its operation, would not constitute a violation of the Act so long as its operation did not require men to go between the cars. This interpretation is unduly narrow.

■ The failure of a coupler to uncouple due to a defect therein is sufficient to establish liability under the Safety Appliance Act, regardless of whether it was necessary for the employee to go between the ends of the cars. Stated another way: In order to establish that the coupler was defective, proof of the necessity of going between the cars is not required.

We find ample authority to support our holding. In Penn v. Chicago & N. W. Ry. Co., 1948, 335 U.S. 849, 69 S.Ct. 79, 93 L.Ed. 398, the Supreme Court affirmed a judgment entered under the Safety Appliance Act in favor of an employee who was injured when his foot slipped into a space at a switch stand after several unsuccessful attempts to uncouple two railroad cars. The plaintiff at all times was stationed alongside the cars, and the United States Court of Appeals for the Seventh Circuit explicitly stated: "There is no pretense, of course, in the instant case that the plaintiff received his injuries because he was required to or did go between the ends of the cars." Penn v. Chicago & N. W. Ry. Co., 7th Cir. 1947, 163 F.2d 995, 997, rev'd, 335 U.S. 849, 69 S.Ct. 79, 93 L.Ed. 398.[3] In Philadelphia & R. Ry. Co. v. M'Kibbin, 3d Cir. 1919, 259 F. 476, 478, involving facts strikingly similar to those of the instant case, the "only evidence" presented to show a violation of the Act was that the plaintiff had tried three times to operate the lever designed to open the coupler and thereby uncouple the cars, and that it would not work. The court stated the question to be "whether the repeated and unsuccessful efforts, by an experienced person, to operate the lever of an automatic coupler * * * without other evidence of its defective condition, is sufficient to permit the inference that the coupler was not in the condition required by the statute when the efforts to operate it were made." 259 F. at 479. The court held that it was. Accord, Nichols v. Chesapeake & Ohio Ry. Co., 6th Cir. 1912, 195 F. 913, 917.[4] Again, there was

---

3. The court of appeals recognized that "proof of a failure to operate is sufficient to raise a jury question," 163 F.2d at 997; but held that the evidence was insufficient to support the jury's verdict for the plaintiff because plaintiff was not in a proper position to operate the coupler, despite the fact that "the record does not disclose definitely where the plaintiff should have been positioned in order to operate the coupler." 163 F.2d 996. The Supreme Court reversed in a per curiam opinion, citing Myers v. Reading Co., 331 U.S. 477, 67 S.Ct. 1334, 91 L.Ed. 1615, which

established a broad role for the jury in drawing inferences from the evidence.

4. In *Nichols, supra,* the court stated that "repeated and unsuccessful efforts to make the lever operate are some evidence that it was not in the condition required by the statute." 195 F. at 917. The railroad distinguishes the case on the ground that the plaintiff in that case, as recited by the court, "climbed up between the cars." The court mentioned that fact, however, after it had announced the principle of law quoted above and was addressing itself solely to the railroad's alle-

no evidence that the mechanism required the plaintiff to go between the cars.

We agree with the contention of the railroad that the statute does not require that uncoupling be automatic. Only coupling must be automatic. But we do not think the charge imposed such a requirement by dispensing with the requirement of proof that plaintiff had to go between the cars in order to uncouple them. Nor do we think that the remainder of the charge required that every pull of the lever result in a release of the coupler. If the switchman operates the coupler with due care in the normal manner, the jury can decide that the coupler is defective in violation of the Act by virtue of its failure to release after several attempts. Penn v. Chicago & N. W. Ry. Co., supra; Philadelphia R. Ry. Co. v. M'Kibbin, supra, 259 F. at 479; Nichols v. Chesapeake & O. Ry. Co., supra 195 F. at 917. The remainder of the charge simply advises the jury that should they find such a violation, it is immaterial that the coupler functioned properly before or after the occasion giving rise to the injuries.

We also agree that the failure of the mechanism to uncouple *may* have been due to the absence of proper slack. See Pennsylvania R. Co. v. Jones, 6th Cir. 1924, 300 F. 525, 527. The evidence would seem to support such a finding. But the evidence also supports the jury's finding that the failure of the coupler to open was due to a defect in the mechanism. This issue was fully developed at the trial and it was plainly within the province of the jury to decide it.

Accordingly, the judgment of the district court is hereby affirmed.

gation that the plaintiff was contributorily negligent. Thus, it appears that the court did not regard the necessity of men going

between the ends of the cars to be an indispensable element of the statutory violation.