**Darrel COLEMAN, Appellee,**

v.

**BURLINGTON NORTHERN, INC., a Delaware corporation, Appellant.**

No. 81–2076.

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1982.

Decided June 28, 1982.

Yaeger & Yaeger, P.A., John B. McCarthy, Minneapolis, Minn., for appellee.

H. K. Bradford, Jr., Richard V. Wicka, Thomas W. Spence, Michael Saeger, St. Paul, Minn., for appellant.

Before LAY, Chief Judge, HENLEY, Circuit Judge, and MARKEY,* Judge.

LAY, Chief Judge.

This is an appeal from a judgment notwithstanding the verdict entered for the plaintiff employee of the Burlington Northern railroad on the issue of liability in an action involving a lower back injury allegedly sustained in the course and scope of employment. The suit was filed under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., and was predicated on a statutory violation of section 2 of the Federal Safety Appliance Act, 45 U.S.C. § 2. The trial was before a jury, and a general verdict for the railroad was returned. The trial court, the Honorable Robert G. Renner presiding, then granted plaintiff's motion for a judgment notwithstanding the verdict on the issue of liability and ordered a new trial on the issue of damages. On retrial the jury returned a verdict of $10,000 damages. The railroad now appeals from the original order granting the judgment notwithstanding the verdict and a new trial on damages. We reverse the judgment of the district court with directions to reinstate the earlier verdict for the railroad.

On September 6, 1974, Coleman worked as a switchman for the defendant in the Willmar, Minnesota, yard. Coleman claims that a pinlifter device failed to function properly when he attempted to uncouple a car, and that repeated efforts to make the device work by pulling harder only proved unsuccessful. Bjork, a co-employee, corroborated Coleman's testimony that when the pinlifter failed to work he called out in pain and Bjork came to his assistance. Bjork testified that he too was unable to effectuate uncoupling with the same pinlifter lever used by Coleman. Bjork was able to uncouple the car only after crossing between the cars and using an adjacent pinlifter lever. Notwithstanding this alleged malfunction, neither workman "bad ordered" the car in question. The railroad's safety rules require employees to "bad order" or report and take unsafe or defective cars out of service immediately and to place them on repair tracks for identification, repair and inspection. Coleman completed his shift that day, but missed a couple of days of work with what was later diagnosed by a company doctor as a strained back. Cole-

---

* Howard T. Markey, Chief Judge, U. S. Court of Customs and Patent Appeals, sitting by desig- nation.

man thereafter worked full time as a switchman without missing any significant time from work until November 1976. During this interim period he also helped build a house, water skiied and hunted on a regular basis. In November 1976 Coleman reinjured his back while crawling in a confined space in the back of a truck during a hunting trip. The neurologist's diagnosis was a bulging lumbar disc requiring conservative treatment and brief immediate hospitalization. The neurologist's prognosis at the time of the trial was the condition was both permanent and degenerative.

The railroad was unable to directly controvert Coleman's testimony regarding the alleged equipment failure. The railroad relied on evidence showing (1) neither Coleman or Bjork "bad ordered" the car with the "faulty" pinlifter; (2) both employees acknowledge that the defendant's safety rules required them to "bad order" cars with defects or unsafe conditions which may cause injury; (3) plaintiff's pre-employment physical reveals a pre-existing back condition of mild scoliosis; (4) plaintiff did not disclose his back condition in a 1979 company physical; (5) plaintiff lied about his condition while undergoing an examination by his treating physician. The defendant also offered the testimony of another railroad employee regarding Coleman's job performance and company policy regarding defective equipment. The plaintiff offered explanations for each of these facts.

■ 45 U.S.C.S. § 2 provides:

On and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier [engaged in interstate commerce by railroad] to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars.

Proof of a violation of this statute is sufficient to establish liability under the Federal Employers' Liability Act. It is well settled that a railroad employee in a personal injury action predicated on the Safety Appliance Act need only prove a statutory violation and is not required to prove negligence. *See Crane v. Cedar Rapids & Iowa City Ry.*, 395 U.S. 164, 166, 89 S.Ct. 1706, 1708, 23 L.Ed.2d 176 (1969); *O'Donnell v. Elgin, Joliet & Eastern Ry.*, 338 U.S. 384, 390–91, 70 S.Ct. 200, 204–05, 94 L.Ed. 187 (1949).

■ The district court correctly observed:

The law is clear that the duty imposed by the Safety Appliance Act is absolute. The theory is neither common law negligence nor strict liability, but statutorily imposed absolute liability. If a pinlifter fails to operate properly and injury thereby results, liability is imposed no matter what the railroad may have done to insure its proper operation and no matter if it worked properly both before and after the malfunction. *Affolder v. New York, Chicago & St. Louis R.R. Co.*, 339 U.S. 96, 70 S.Ct. 509 [94 L.Ed. 683] (1950); *Southern Pacific Co. v. Mahl*, 406 F.2d 1201 (5th Cir. 1969); *Chicago, St. Paul, Milwaukee & Omaha Ry. Co. v. Muldowney*, 130 F.2d 971 (8th Cir. 1942); *Atchison, Topeka & Santa Fe Ry. Co. v. Keddy*, 28 F.2d 952 (9th Cir. 1928); *Burho v. Minneapolis & St. Louis Ry. Co.*, 121 Minn. 326, 141 N.W. 300 (1913).

Where there is no factual issue as to the failure of a safety appliance required by the Act to function properly, the jury must be given a preemptory instruction informing them that said failure did, indeed, constitute a violation of the Act. *O'Donnell v. Elgin, Joliet & Eastern Ry. Co.*, 338 U.S. 384, 70 S.Ct. 200 [94 L.Ed. 187] (1949).

It is also a well settled rule that "the absence of a 'defect' cannot aid the railroad if the coupler ... failed ... on the occasion in question." *Carter v. Atlanta & St. Andrews Bay Ry.*, 338 U.S. 430, 434, 70 S.Ct. 226, 229, 94 L.Ed. 236 (1949). That is, the plaintiff must show a failure of the equipment to perform as required by the Safety Appliance Act, and that failure is in itself an actionable wrong; however, the plaintiff does not have to show a "bad condition" of

the coupler. *See Affolder v. New York, Chicago & St. Louis R.R.*, 339 U.S. 96, 98–99, 70 S.Ct. 509, 510–11, 94 L.Ed. 683 (1950); *St. Louis Southwestern Ry. v. Ferguson*, 182 F.2d 949, 952–53 (8th Cir. 1950).

The district court determined that "reasonable minds could not have concluded that the pinlifter did not fail to operate properly," that "there was no *bona fide* evidentiary dispute regarding the failure of the pinlifter to operate properly."

■ It is well settled that the test for a judgment notwithstanding the verdict is that set forth in *Hanson v. Ford Motor Co.*, 278 F.2d 586 (8th Cir. 1960). Both the trial court and this court must (1) consider the evidence in the light most favorable to the prevailing party; (2) assume all evidentiary conflicts are resolved in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; (4) give the prevailing party the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and (5) deny the motion if reasonable minds could differ as to the conclusion to be drawn from the evidence. *See* 278 F.2d at 596. "Circumstantial as well as direct evidence . . . is relevant to a determination of sufficiency" of evidence to support a jury verdict, and "[a] verdict may be directed or a jury verdict overturned 'only where the evidence points *all one way* and is susceptible of *no* reasonable inferences sustaining the position of the nonmoving party." *Zoll v. Eastern Allamakee Community School District*, 588 F.2d 246, 250 (8th Cir. 1978).

■ The defendant asserts that there is ample evidence, primarily the two switchmen's failure to bad order the car, from which the jury could draw reasonable and logical inferences and decide that there was, in fact, never an equipment failure. The district court disagreed, finding that this evidence did not affect plaintiff's credibility on the violation issue:

> [E]specially in light of testimony that (1) he did inform the company of his injury and the cause therefor and (2) it is not an uncommon practice of switchmen not to bad order cars with improperly operation pinlifters, and (3) the railroad took no disciplinary action against plaintiff for failure to comply with written company policy requiring bad ordering even though it was aware of his failure to do so in this instance.

It is at this point that this court is required to differ with the analysis of the court below. Although the plaintiff does not have to show that he bad ordered the malfunctioning car in order to prove the requisite equipment failure to establish a violation of 45 U.S.C. § 2, and although the proof of a failure would entitle the plaintiff to a preemptory instruction regarding statutory violation, we find that the evidence in the present case, especially that regarding bad ordering, does at least affect the plaintiff's and his corroborating witness' credibility sufficiently to create a question of fact as to whether or not the pinlifter failed to operate in a proper manner. In addition, the defendant's attack on plaintiff's credibility created a sufficient question of fact for the jury on the issue of causation. It is not possible to determine from the original general verdict whether the jury found against plaintiff on violation, causation, or damages; however, the district court properly instructed the jury in the original trial as to the law regarding each facet.[1]

1. The court instructed the jury:

  Plaintiff alleges that at the time and place in question, the pin lifter on a particular railway car was defective in this respect: That the pin lifter did not and would not function properly in that it failed to release the knuckle on the coupler of the car.

  Plaintiff further alleges that the defective pin lifter was a cause of plaintiff's injuries and consequent damages.

  Section II of the Federal Safety Appliance Act provides in part that: It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars.

  The issue, in other words, which you must decide is whether or not the car in question

In conclusion, we find that reasonable minds could differ on the issues of failure of the pinlifter and causation and that the jury's original verdict for the defendant should not have been disturbed. For these reasons, the judgment of the district court is reversed and the order granting judgment notwithstanding the verdict on liability and a new trial on damages is vacated.

Judgment reversed.

was equipped with a pin lifter and a coupler which operated correctly as outlined in these instructions. If you should find from a preponderance of the evidence that the defendant violated the provisions of Section II of the Federal Safety Appliance Act, as alleged, and that the violation played any part, no matter how small, in bringing about or actually causing injury to the plaintiff, then the plaintiff is entitled to recover from the defendant such damages as you shall find from a preponderance of the evidence that the plaintiff actually sustained as a result of the violation of the Federal Safety Appliance Act, without any requirement of a showing of negligence on the part of the defendant.

. . . .

On the other hand, if you should find one, that the pin lifter was operating properly and that the defendant's uncoupling device was not in violation of the Safety Appliance Act; or, two, that the violation played no part in causing an injury or damages to the plaintiff, then your verdict should be for the defendant.