LEE ELLIS, Plaintiff-Appellant, v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, INC., Defendant-Appellee.

Fifth District No. 5—88—0390

Opinion filed January 4, 1990.

GOLDENHERSH, J., dissenting.

Kujawski, Rosen & Faerber, of Belleville (Fritz G. Faerber, of counsel), for appellant.

John B. Gunn and Leslie G. Offergeld, both of Walker & Williams, P.C., of Belleville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

In an action seeking recovery for personal injury, plaintiff, Lee Ellis, appeals from a judgment entered December 10, 1987, in the circuit court of St. Clair County, following the return of a jury verdict in favor of defendant, St. Louis Southwestern Railway Company.

Plaintiff, Lee Ellis, was employed by St. Louis Southwestern Railway Company (hereinafter Railway) in 1972 as a switchman-brakeman. Plaintiff was promoted to the position of assistant trainmaster in 1975. In 1979, the railway found it necessary that plaintiff return to his previous position as a switchman-brakeman. Approximately two years later, on December 20, 1981, while working in his capacity as a switchman-brakeman, plaintiff allegedly injured his back.

A brakeman-switchman works in the rail yards, where his duties require that he lift heavy objects, jump on and off of box cars, bend, squat and crawl. At the time plaintiff allegedly was injured, he was working in the trainyard as a pinlifter. A pinlifter walks beside a train of slowly moving railroad cars and disconnects certain cars from the train. To disconnect a railroad car, the pinlifter pulls up on a pin that disengages the knuckle coupling one railroad car to the next.

At trial, plaintiff testified that on the day he was injured, one of the pins on a railroad car did not release on the first pull. Since the pin did not release on the first pull as it was supposed to, plaintiff jerked on the pin three or four times, but was still unsuccessful in disengaging the knuckle. Plaintiff stated that on the third or fourth jerk, he "gave it all [he] had" and felt something snap in his back. After feeling a snap in his back, plaintiff testified, he stopped and went to inform the foot board yardmaster of the incident. Because only a small fraction of the railway cars remained to be uncoupled in the switching operation then in progress, the yardmaster asked whether the plaintiff could continue. Plaintiff responded that he would make an attempt, and continued working. In completing his accident report form, plaintiff stated that the accident happened "[w]hile pulling pins, on about 45th car, I started developing lower back pain on right side extending down right leg."

Although the Railway had a program for mechanical inspections of the cars as they arrived at the trainyard, plaintiff knew of no inspection program which included a check to determine whether the pinlifters were working properly. Plaintiff stated that, by looking at a pinlifter, he could not determine whether a defect existed. Moreover, plaintiff knew that it was the Railway's practice to inspect any reported defective conditions. However, plaintiff testified that he did not report the car which allegedly caused his injury because there was

nothing unusual about a pinlifter sticking, and because he assumed that the foreman on duty was aware of the particular car which had an inoperative pinlifter.

James McAllister, the foot board yardmaster on duty at the time of plaintiff's alleged injury, was required to complete two accident forms. Neither of these forms reports any defective condition. In fact, in response to the portion of the report form requesting that he state how the accident occurred, McAllister responded "Don't know." Moreover, McAllister testified at trial that, although pinlifters have mechanical defects approximately 1% of the time, he recalled no particular problem with any pinlifters at the time of plaintiff's alleged injury.

Ashley Spears was the assistant trainmaster on duty at the time of plaintiff's alleged injury. At that time, Spears was working in the control tower and was informed that plaintiff wished to speak with him. Plaintiff informed Spears that, while pulling pins, his back began bothering him. In his capacity as trainmaster, it was Spears' responsibility to investigate on-the-job accidents. As part of the preliminary investigation, Spears required plaintiff, and other members of plaintiff's crew, to complete standard accident report forms used by Railway. In completing the accident report, plaintiff made no reference to a pinlifter sticking or being otherwise defective.

Also as part of Spears' investigation, he was required to complete an accident investigation guide sheet. Spears testified that when a personal injury is reported it becomes a primary concern of the Railway to inspect the equipment which caused injury. When Spears asked plaintiff whether there was any particular car involved, plaintiff responded that there was none. When asked if he slipped, tripped, or fell, plaintiff responded that he had not. When asked if the inclement weather on the evening of the alleged injury, which included freezing rain and sleet, had anything to do with the alleged injury, plaintiff responded that it had not. Likewise, plaintiff stated that the speed of the cars had nothing to do with his alleged injury.

The first issue presented for our consideration is whether the trial court erred in failing to submit to the jury plaintiff's tendered issue instruction related to the Railway's potential liability for failing to provide plaintiff a safe place in which to work. Plaintiff tendered two issues instructions pertaining to the theories under which plaintiff believed he was entitled to recovery. These issues were that the Railway provided plaintiff with a defective pinlifter with which to work, and that the Railway failed to provide plaintiff with a reasonably safe place in which to work. Of these two issues instructions, the trial

court allowed the former to be submitted to the jury and refused submission of the second. Upon review, we affirm the trial court's determination that only the former issues instruction be submitted to the jury.

Under the Federal Employer's Liability Act (45 U.S.C. §51 *et seq.* (1982)), it is required that Railway provide its employees with a safe place in which to work. In an instruction separate from the issues instructions, the jury was instructed on the Railway's duty to provide plaintiff a safe place in which to work. On appeal, plaintiff argues that the safe place to work instruction should have been submitted to the jury as a separate issue instruction. We disagree.

On review, the proper inquiry is whether the instructions as a whole were sufficiently clear so as to not mislead the jury and to fairly and correctly state the law. (*Lundberg v. Church Farm, Inc.* (1986), 151 Ill. App. 3d 452, 502 N.E.2d 806.) A trial court has discretion in deciding which issues are raised by the evidence. (*Black v. Peoria Marine Construction Co.* (1987), 160 Ill. App. 3d 357, 513 N.E.2d 622.) In the case now before us, the record does not support an issue instruction on Railway's failure to provide a safe place to work. Although Railway's failure to provide a safe place to work was one theory of recovery alleged in plaintiff's complaint, it does not necessarily follow that plaintiff is automatically entitled to have the jury instructed on this theory of recovery. The trial court is empowered with the discretion to refuse to submit to the jury an issue instruction based on a theory not supported by the record.

In the present case, the only theory of defendant Railway's negligence arguably supported by the record is the Railway's failure to provide the plaintiff with pinlifters in good working order. In the face of evidence that it was the policy of the Railway that its employees pull on the pinlifters only once, and not jerk the pinlifters, plaintiff testified that he pulled on the alleged injury-causing pinlifter two or three times, and then, after the knuckle did not uncouple, "gave it all he had." This evidence indicates that plaintiff's injury was a sudden snap of his back. Somewhat to the contrary, other evidence in the record, such as plaintiff's complaint at the time of the accident that he began developing back pain, and his inability to assign his injury to any particular train car, indicates that the injury may not have been the result of any isolated pinlifting attempt, but rather, a cumulative effect of many pinliftings. Although there appears to be some inconsistency in the evidence, this inconsistency affects only the weight to be assessed to the evidence by the jury, and not the admissibility of the evidence. Thus, the record does support the submission of the is-

sues instruction relating to the defective pinlifters. However, we are unable to so find on plaintiff's tendered safe workplace issue instruction.

When asked if the weather (which was cold and icy), the condition of the railway, or the speed of the train had anything to do with his injury, the plaintiff responded they did not. Nor do we find any other evidence to support a safe workplace issue instruction. Without making reference to any particular evidentiary support, plaintiff argues on appeal that the trial court's failure to submit the tendered issue instruction regarding a safe place to work deprived plaintiff of any opportunity of enforcement of the law. We disagree.

 █ The jury was instructed in more than one general instruction that the Railway, pursuant to the Federal Employer's Liability Act, was required to provide its employees with a safe place to work. Although *Rogers v. Missouri Pacific R.R. Co.* (1957), 352 U.S. 500, 1 L. Ed. 2d 493, 77 S. Ct. 443, the landmark case on causation in Federal Employer's Liability Act cases, effectively reduces the causation requirement necessary to prove a negligence case, it is still necessary for a plaintiff to show that the defendant's negligence played at least a slight part in producing the injury for which recovery is sought. Thus, it is not sufficient merely to state that the employer was negligent in providing a safe place to work and that the plaintiff was injured. Plaintiff must attempt to draw some causal relation between defendant's negligence and plaintiff's injury. It is at that point that plaintiff becomes entitled to an issue instruction on the underlying theory of negligence. Plaintiff, in the case *sub judice*, failed to present evidence to support a theory of negligence based on Railway's failure to provide a safe place to work; therefore, the trial court properly denied submission of plaintiff's tendered issue instruction based on a theory not supported by the evidence.

 Plaintiff's second argument on appeal is that the trial court erred in failing to enter judgment for plaintiff on plaintiff's motion for directed verdict, or, in the alternative, erred in failing to set aside the verdict and ordering a new trial. Plaintiff argues that, pursuant to the Safety Appliance Act (45 U.S.C. §2 (1982)), Railway is strictly liable for plaintiff's injuries which resulted from his attempt to correct a malfunctioning coupler.

Section two of the Safety Appliance Act provides:

"It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and

which can be uncoupled without the necessity of men going between the ends of the cars." (45 U.S.C. §2 (1982).)

Plaintiff relies on the holding of this court in *Buskirk v. Burlington Northern, Inc.* (1982), 103 Ill. App. 3d 414, 431 N.E.2d 410, where we held defendant railroad strictly liable for the injuries suffered by an employee while going between two train cars to straighten a misaligned drawbar. This reliance upon *Buskirk* is misplaced, because in that case the facts were undisputed that plaintiff was between two train cars attempting to straighten misaligned drawbars at the time he was injured. (103 Ill. App. 3d at 415, 431 N.E.2d at 412.) In the present case, the facts surrounding plaintiff's injury are not undisputed.

■ Had the facts in the instant case unequivocally indicated that plaintiff was injured while going between two railway cars due to the cars' failure to automatically couple, or uncouple, without it becoming necessary for an employee to go between the cars, then section 2 of the Act would be applicable. However, in this case, there is no evidence in the record to support a claim that plaintiff was injured while between two cars. At one point in his testimony, plaintiff claimed that, due to the varying size of train cars, it sometimes was necessary to position himself in front of or behind another car in order to handle a pinlifter. However, we find no evidence to support a claim that plaintiff was between the ends of two cars at the time of his injury. Therefore, a finding of strict liability pursuant to the Act would have been improper on these facts.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is hereby affirmed.

Affirmed.

RARICK, J., concurs.

JUSTICE GOLDENHERSH, dissenting:
I respectfully dissent.

The majority in this opinion affirms the trial court's refusal of plaintiff's tendered instruction on a safe place to work and in the course of the opinion reviews the evidence admitted on that question. I differ with my colleagues, determining that on the record before us there is sufficient evidence to submit a safe place to work instruction and that the trial court's failure to give that tendered instruction was reversible error.

It is basic law that a jury should be instructed on all theories of a

given case that have evidence in the record to support that particular theory. *Ervin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140, 357 N.E.2d 500, stands for the proposition that a plaintiff has the right to have the jury "clearly and fairly instructed" on each theory of his case that is supported by the evidence. 65 Ill. 2d at 145, 357 N.E.2d at 503.

The majority opinion recites sufficient evidence to support plaintiff's theory of failure to provide a safe place to work in its succinct recitation of the events on the day in question. The proper standard to be·applied by the trial court is whether there is evidence in the record that arguably supports the theory in question. *Babcock v. Chesapeake & Ohio Ry. Co.* (1979), 83 Ill. App. 3d 919, 404 N.E.2d 265.

As related in the majority opinion:

> "At trial, plaintiff testified that on the day he was injured, one of the pins on a railroad car did not release on the first pull. Since the pin did not release on the first pull as it was supposed to, plaintiff jerked on the pin three or four times, but was still unsuccessful in disengaging the knuckle. Plaintiff stated that on the third or fourth jerk, he 'gave it all [he] had,' and felt something snap in his back." (193 Ill. App. 3d at 359.)

This scenario, standing alone, is arguable support for the theory of failure to provide a safe place to work. A jury contemplating this evidence could reasonably conclude, if properly instructed, that a railroad's duty of a safe place to work meant in this particular case that the railroad had the obligation to supply pins that would release on the first pull. As the majority opinion later notes, it was the policy of the railroad that its employees pull on these pinlifters only once. The trier of fact could reasonably conclude that the workplace, inclusive of its machinery, should properly meet the standards that the employer itself has set and that failure to do so was negligence.

In order to consider or reach these conclusions, however, the jury must be properly instructed and meet the *Ervin* test as stated above. The majority opinion notes that the instructions as a whole should not mislead the jury, citing *Lundberg v. Church Farm, Inc.* (1986), 151 Ill. App. 3d 452, 502 N.E.2d 806, but in this particular trial, the instructions as a whole did, in fact, mislead.

Initially, the jury was instructed as part of Illinois Pattern Jury Instructions (IPI), Civil 2d No. 1.01, that:

> "The law applicable to this case is contained in these instructions and it is your duty to follow them. You must consider these instructions as a whole, not picking out one instruction and disregarding others." (Illinois Pattern Jury Instructions,

Civil, No. 1.01[2] (2d ed. 1971).)

They were subsequently instructed in IPI Civil 2d No. 160.08 that:

"It was the duty of the railroad to use ordinary care to provide the plaintiff with a reasonably safe place in which to do his work." (Illinois Pattern Jury Instructions, Civil, No. 160.08 (2d ed. 1971).)

Plaintiff tendered, and the court refused, IPI Civil 2d No. A20.01 (Modified) (Supp. 1986), noted as "Plaintiff's Instruction No. 16," which noted in part:

"The plaintiff claims that he was injured and sustained damage and that the defendant St. Louis Southwestern Railway Company was negligent in one or more of the following respects:

In that St. Louis Southwestern Railway Company:

failed to provide plaintiff with a reasonably safe place in which to work; provided plaintiff with a defective pin lifter with which to work.

Plaintiff further claims that one or more of the foregoing was a proximate cause of his injuries." (See Illinois Pattern Jury Instructions, Civil, No. A20.01 (2d ed. Supp. 1986).)

The trial court, in fact, instructed the jury with plaintiff's instruction No. 16A, IPI Civil 2d No. A20.01 (Modified) (Supp. 1986), which read as follows:

"The plaintiff claims in Count I of his Complaint that he was injured and sustained damage and that the defendant St. Louis Southwestern Railway Company was negligent in one or more of the following respects:

provided plaintiff with a defective pin lifter with which to work.

The plaintiff further claims that one or more of the foregoing was a proximate cause of his injuries." See Illinois Pattern Jury Instructions, Civil, No. A20.01[1] (2d ed. Supp. 1986).

Defendant argues to this court that since the jury was told of the duty to provide a safe place within which to work, the jury was not misled. This is clearly not so when one considers the admonition of the court to consider the instructions as a whole and the standard cited above in *Lundberg* that the instructions taken as a whole should not mislead the jury. This jury was told to heed all the instructions as a whole and not individually, was told that a duty existed and then was not told that plaintiff was alleging a breach of that particular duty. The only fair and reasonable way to read these instructions as a whole is that defendant complied with the duty to provide a safe place

to work and that the jury, being guided by these instructions as a whole, should not consider a possible breach of that duty. Since the evidence submitted in this case, as recited in the majority opinion, shows that there was arguable support for the theory of breach of the duty to provide a safe place to work, failure of the trial court to instruct the jury on this issue was error, and justifies reversal and remand.

For the foregoing reasons, I would reverse and remand this cause for a new trial.