CHARLES E. MILLER, Plaintiff-Appellant, v. ALTON AND SOUTHERN RAILWAY COMPANY, Defendant-Appellee.

Fifth District   No. 5—91—0786

Opinion filed September 14, 1992.

Jon G. Carlson, of Edwardsville, for appellant.

Donald J. Dahlmann and Leslie G. Offergeld, both of Walker & Williams, P.C., of Belleville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff, Charles Miller, appeals from a summary judgment entered in favor of defendant, Alton & Southern Railway Company, by the circuit court of Madison County, on count II of plaintiff's complaint alleging violation of the Federal Safety Appliance Act. (45 U.S.C.S. §1 *et seq.* (Law. Co-Op 1992).) The complaint, filed September 27, 1989, alleges that plaintiff was employed as a conductor for defendant railroad and that while plaintiff was attempting to perform his duties uncoupling railroad cars, a defective pin lifter stuck and caused him to receive injuries to his back.

On October 21, 1991, defendant filed a motion for summary judgment alleging that plaintiff had successfully uncoupled the cars with the pin-lifting mechanism without the necessity of going between the cars and that therefore the Federal Safety Appliance Act did not apply. On that same date, the circuit court of Madison County granted defendant's motion for summary judgment and, having entered judgment for defendant on count II of plaintiff's complaint, found no just reason for delaying enforcement or appeal of the judgment. Accordingly, plaintiff brings this appeal.

Section 2 of the Federal Safety Appliance Act provides:

"[I]t shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." (45 U.S.C.S. §2 (Law. Co-Op 1992).)

It is clear that the phrase "without the necessity of men going between the ends of the cars" applies to both the acts of coupling and uncoupling. (*Johnson v. Southern Pacific Co.* (1904), 196 U.S. 1, 18-19, 49 L. Ed. 363, 370, 25 S. Ct. 158, 162.) The court explained,

"[t]he phrase literally covers both coupling and uncoupling, and if read, as it should be, with a comma after the word 'uncoupled,' this becomes entirely clear." 196 U.S. at 18-19, 49 L. Ed. at 370, 25 S. Ct. at 162.

A person injured as a result of a railroad's violation of the Federal Safety Appliance Act may bring a civil action for damages under the Federal Employer's Liability Act. (45 U.S.C. §51 *et seq.* (1988).) While the Federal Employer's Liability Act (FELA) requires a finding of negligence on the part of the railroad, a violation of the Federal Safety Appliance Act (FSAA) is considered to be negligence *per se*, or conclusive proof of negligence, on the part of the railroad in an action brought under the FELA. Annot., 16 A.L.R.2d 654 (1951).

The evidence as to how plaintiff incurred his injury is undisputed. Plaintiff testified in his deposition that he pulled a pin lifter in an attempt to uncouple two railroad cars. The pin lifter stuck and threw plaintiff off balance, pulling him in one direction. Plaintiff kept a steady pull on the pin lifter until it finally released. When the pin lifter suddenly released, it threw plaintiff in the other direction, twisting and injuring his back. At no time was it necessary for plaintiff to go between the railroad cars to uncouple them, and plaintiff did successfully uncouple the cars without putting his body between them. The evidence also reveals that the car which plaintiff was attempting to uncouple had been "cornered," that is, the corner of the car had come into contact with something and was caved in. The housing for the pin lifter, which holds it in the proper position, was bent down. The pin lifter operates to open the knuckle of the coupler mechanism, uncoupling the cars.

In support of its motion for summary judgment, defendant argues that a violation of section 2 of the FSAA occurs only when it is necessary for the employee to go between the railroad cars to effect uncoupling. Defendant also argues that where the employee is not required to go between the cars to effect uncoupling, there is no violation of the FSAA even if the pin lifter or uncoupling mechanism is defective and the employee is injured as a result.

Defendant relies on our opinion in *Ellis v. St. Louis Southwestern Ry. Co.* (1990), 193 Ill. App. 3d 357, 549 N.E.2d 899, in which we stated:

> "Had the facts in the instant case unequivocally indicated that plaintiff was injured while going between two railway cars due to the cars' failure to automatically couple, or uncouple, without it becoming necessary for an employee to go between the cars, then section 2 of the Act would be applicable. How-

ever, in this case, there is no evidence in the record to support a claim that plaintiff was injured while between two cars. \*\*\* Therefore, a finding of strict liability pursuant to the Act would have been improper on these facts." (193 Ill. App. 3d at 363, 549 N.E.2d at 902-03.)

Defendant argues that *Ellis* stands for the proposition that section 2 of the FSAA simply does not apply where the employee is not required to go between the railroad cars to uncouple them. Thus, defendant argues, it is entitled to summary judgment in the instant case where it is undisputed that plaintiff was not required to go between the railroad cars to effect the uncoupling.

We see the need to clarify our holding in *Ellis*, for defendant relies on it for a proposition of law which we did not intend. In *Ellis*, as in the instant case, the plaintiff was injured while attempting to use a pin lifter to uncouple railroad cars. One of the pins did not release on the first pull. Plaintiff jerked on the pin three or four times, but was still unable to disengage the knuckle. Finally, plaintiff jerked hard on the pin, injuring his back.

On plaintiff's suit for personal injuries, a jury returned a verdict for defendant railroad. One of plaintiff's arguments on appeal was that the trial court had erred in failing to direct a verdict in favor of plaintiff, or in failing to set aside the jury's verdict and order a new trial. Plaintiff argued that, pursuant to the FSAA, the railroad was strictly liable for plaintiff's injuries which resulted from his attempt to correct a malfunctioning coupler. In affirming the trial court, we made the statement relied on by defendant herein. However, by that statement, we did not intend to hold that section 2 of the FSAA applies only when the plaintiff is required to go between railroad cars to uncouple them and thereby is injured.

What we held in *Ellis* is that where it is disputed whether the plaintiff was between the railroad cars when injured, a directed verdict is improper. Where the plaintiff is required to go between railroad cars in order to successfully uncouple them and is injured while so between the cars, the railroad is strictly liable for that plaintiff's injuries, whether the uncoupler is defective or not. In such a case, where it is undisputed that the plaintiff was between the cars when injured, a directed verdict, or summary judgment, is proper.

However, where a plaintiff is injured, not while between railroad cars, but while attempting to uncouple them, the railroad is liable only if the coupler was defective at the time plaintiff attempted to use it and that defective condition was a proximate cause of plaintiff's injuries. Because the questions whether the coupler was defective and

whether the defect was a cause of plaintiff's injuries are for the jury, directed verdict or summary judgment is not proper.

In *Ellis*, the trial court properly allowed the case to go to the jury on the questions whether plaintiff was, in fact, between the railroad cars when injured and, if not, whether the coupling mechanism was defective, causing plaintiff's injury. If the jury found that plaintiff was not between the cars at the time he was injured but that the coupling mechanism was defective, causing plaintiff's injuries, the railroad would be absolutely liable for plaintiff's injuries. In such a case, the question of negligence, or due care, by the railroad is not at issue. A defective coupling mechanism violates the FSAA and is negligence *per se*.

Our intended holding in *Ellis* is consistent with decisions of the United States Supreme Court which have construed section 2 of the FSAA. Those cases hold that, under section 2 of the FSAA, not only must the railroad provide couplers which couple automatically and uncouple without the necessity of men going between the cars, but the couplers must also couple and uncouple safely and adequately, that is, they must not be defective. If an employee is injured as a result of a defective coupler, section 2 of the FSAA is violated regardless of whether the employee was between railroad cars at the time of the injury. Such an interpretation is consistent with the purpose of the FSAA, which is remedial in nature and therefore to be construed liberally. See *Bocook v. Louisville & Nashville R.R. Co.* (D. Ky. 1946), 67 F. Supp. 154, 159.

In *Louisville & Nashville R.R. Co. v. Layton* (1917), 243 U.S. 617, 61 L. Ed. 931, 37 S. Ct. 456, the plaintiff was injured when the railroad car on which he was standing for the purpose of releasing the brake was struck by a cut of cars which had failed to couple with the locomotive when impacted for that purpose. Instead of coupling, the force of the impact drove the cut of cars into the car on which plaintiff was standing, throwing him to the track and injuring him. Plaintiff recovered on the basis of a violation of section 2 of the FSAA because the cut of cars had not been equipped with a coupler which coupled automatically on impact. On appeal, the railroad argued that section 2 of the FSAA does not apply because it is intended only for the benefit of employees injured when between cars for the purpose of coupling or uncoupling them. In rejecting the railroad's argument, the Supreme Court stated:

> "While it is undoubtedly true that the immediate occasion for passing the laws requiring automatic couplers was the great number of deaths and injuries caused to employees who were

obliged to go between cars to couple and uncouple them, yet these laws as written are by no means confined in their terms to the protection of employees only when so engaged. The language of the acts and the authorities we have cited make it entirely clear that the liability in damages to employees for failure to comply with the law springs from its being made unlawful to use cars not equipped as required,—not from the position the employee may be in, or the work which he may be doing at the moment when he is injured." (243 U.S. at 621, 61 L. Ed. at 933-34, 37 S. Ct. at 457.)

Thus, it is not necessary that plaintiff be between railroad cars at the time of his injury in order for section 2 of the FSAA to apply.

In *Minneapolis & St. Louis R.R. Co. v. Gotschall* (1917), 244 U.S. 66, 61 L. Ed. 995, 37 S. Ct. 598, the plaintiff was a brakeman on a train. He was walking along the tops of the train cars toward the locomotive when the train separated because of the opening of a coupler on one of the cars, resulting in an automatic setting of the emergency brakes and a sudden jerk which threw plaintiff off the train. The Supreme Court held that the jury was properly instructed that it could infer negligence from the fact that the coupler failed to perform its function because of the positive duty imposed by the FSAA upon the railroad to furnish safe appliances for the coupling of cars. Thus, negligence could be inferred from the fact that the coupler was defective, even if it otherwise complied with the FSAA in that it coupled automatically upon impact without the necessity of men going between the ends of the cars.

Several cases have explicitly held that once the predicate of malfunctioning equipment has been established, it is irrelevant whether a workman places all or part of his body between the cars. "Indeed, if he is injured because of a defective coupler, he may recover without even having gone between the cars *at all*." (Emphasis in original.) *United Transportation Union v. Lewis* (D.C. Cir. 1983), 711 F.2d 233, 249.

In *Southern Pacific Co. v. Mahl* (5th Cir. 1969), 406 F.2d 1201, the plaintiff was injured while trying to uncouple two railroad cars by use of a pin lifter. After signalling the engineer for slack, plaintiff attempted to lift the pin, but the uncoupling mechanism failed to release. Plaintiff again called for slack and repeated the process, but again the mechanism failed to release. He signalled the engineer for a third try, when he applied greater force, still without success, and in the process suffered a severe strain to his body. One count of plaintiff's complaint against the railroad alleged that the uncoupling device

was defective in violation of the FSAA. The jury agreed, finding that defendant had violated the FSAA and that the injury had resulted from this violation. The railroad appealed, arguing that a violation of the FSAA predicated upon the failure of a mechanism to uncouple cannot be established without proof of the necessity of men going between the ends of the cars. The railroad pointed out that the failure of a coupling device to uncouple may result from the absence of slack rather than from a defect in the mechanism. The court, pointing out that the broad purpose of the FSAA is to assure the safety of railroad employees by requiring the railroads to furnish safe appliances for the coupling of cars, held:

> " 'The risk in coupling and uncoupling was the evil sought to be remedied,' [citation], and that risk was to be obviated by the use of couplers coupling automatically by impact and uncoupling without the necessity of men going between the ends of cars. The duty to furnish the type of couplers specified by the statute is plainly imposed. But we think the statute requires more. As one court has stated:
>
> > 'It is not only the duty of the railroad to provide such couplers, but to keep them in such operative conditions that they will always perform their functions. *The test of compliance is the operating efficiency of the couplers with which the car is equipped.* (Emphasis added.)'
>
> [Citation.] In short, the railroad is obligated to provide safe couplers that function without exposing employees who operate them to the risk of bodily harm. But under the interpretation urged upon us by the railroad, the use of a coupling device, no matter how dangerous it might prove on occasion to the employees charged with its operation, would not constitute a violation of the Act so long as its operation did not require men to go between the cars. This interpretation is unduly narrow.
>
> The failure of a coupler to uncouple due to a defect therein is sufficient to establish liability under the Safety Appliance Act, regardless of whether it was necessary for the employee to go between the ends of the cars. Stated another way: In order to establish that the coupler was defective, proof of the necessity of going between the cars is not required." (*Mahl*, 406 F.2d at 1203-04.)

The court went on to state, "If the switchman operates the coupler with due care in the normal manner, the jury can decide that the coupler is defective in violation of the Act by virtue of its failure to release after several attempts." (406 F.2d at 1205.) The court pointed

out that failure of the mechanism to uncouple may be due to the absence of proper slack and not to a defect in the mechanism. Whether the mechanism is defective is a jury question.

■ We agree with the holding and reasoning of the *Mahl* court. Where, as in the instant case, the evidence is undisputed that plaintiff was not required to go between the ends of the railroad cars in order to couple them, the questions of whether the uncoupling mechanism was defective and whether that defective condition was a proximate cause of plaintiff's injuries remain for the jury. Thus, in the instant case, the trial court erred in granting summary judgment in favor of defendant railroad based solely on the fact that plaintiff was not required to go between the ends of the railroad cars to uncouple them.

Accordingly, we reverse the summary judgment entered by the circuit court of Madison County in favor of defendant, Alton & Southern Railway Company, on count II of plaintiff's complaint and remand this cause for further proceedings not inconsistent with this opinion.

Reversed and remanded.

GOLDENHERSH, P.J., and RARICK, J., concur.